# EXHIBIT B

BOLHOUSE, HOFSTEE & McLEAN, P.C.
ATTORNEYS AT LAW
GRANDVILLE STATE BANK BUILDING
3996 CHICAGO DRIVE SW
GRANDVILLE, MICHIGAN 49418

Mark D. Hofstee
Michelle M. McLean
Jamie J. Vander Kolk
Victoria J. Drake
Matthew F. Burns
Katie N. Steffes

Richard L. Bolhouse *(1953 – 2021)*

Telephone (616) 531-7711
Facsimile (616) 531-7757

www.bolhouselaw.com

December 15, 2023

*VIA CERTIFIED MAIL RESTRICTED DELIVERY*

Tebra Technologies, Inc.
C/O Incorporating Services, LTD
40600 Ann Arbor Road E, Suite 200
Plymouth, MI 48170

> **Re:** **Joe Martino Counseling, LLC v Tebra Technologies, Inc.**
> **Case No. 23-12090-CBB**
> **Our File No. 23-0439**

Dear Tebra Technologies, Inc.:

Enclosed please find copies of the following, filed on behalf of Joe Martino Counseling, LLC, in the Kent County Circuit Court:

1. Notice for Assignment to the Specialized Business Docket;
2. Summons;
3. Plaintiff's Verified Complaint for Breach of Fiduciary Duty and Breach of Contract and Request for Temporary Restraining Order;
4. Plaintiff's Ex-Parte Motino for a Temporary Restraining Order Pursuant to MCR 3.310(B) (Expedited Consideration Requested); and
5. Plaintiff's Brief in Support of a Motion for a Temporary Restraining Order Pursuant to MCR 3.310(B) (Expedited Consideration Requested.

If you have any questions or concerns, please do not hesitate to contact our office.

Sincerely,

Danielle Schoonmaker
Paralegal

/dcs
Enclosures

Cc:    Joe Martino Counseling (via email)

| STATE OF MICHIGAN<br>COUNTY OF KENT<br>17TH CIRCUIT COURT | NOTICE FOR<br>ASSIGNMENT TO THE<br>SPECIALIZED BUSINESS DOCKET | CASE NUMBER<br>23-1 2 0 9 0BB |
|---|---|---|

180 Ottawa Avenue NW, Grand Rapids, MI 49503                616-632-5025

| Plaintiff's name(s), address(es)and telephone no(s)<br>Joe Martino Counseling, PLLC | V | Defendant's name(s), address(es) and telephone no(s)<br>Tebra Technologies, Inc.<br>c/o Incorporating Services, LTD<br>40600 Ann Arbor Road E, Suite 200<br>Plymouth, MI 48170 |
|---|---|---|
| Plaintiff's attorney, bar no. , address,  telephone no.,<br>and email address<br><br>Michelle M. McLean (P71393)<br>Bolhouse, Hofstee & McLean, P.C.<br>3996 Chicago Dr SW<br>Grandville, MI 49418<br>616-531-7711 | | Defendant's attorney, bar  no. , address,  telephone no., and<br>email address |

The ■ Plaintiff ☐ Defendant requests assignment of the above captioned case to the
Specialized Business Docket in that case satisfies the requirements of Section II(A) of
Local Administrative Order 2017-02 because the case falls into the following category:

■   An action in which all the parties are business enterprises;

☐   An action in which at least 1 party is a business enterprise and the other parties are its present or former owners, managers, shareholders, members, directors, officers, agents, employees, suppliers, or competitors and the claims arise from one of those relationships;

☐   An action in which at least 1 party is a nonprofit organization and claims arise out of that party's organizational structure, governance, or finances;

☐   An action involving the sale, mergers, purchase, combination, dissolution, liquidations, organizational structure, governance or finances of a business enterprise;

■   An action involving information technology, software, website development, maintenance, or hosting;

☐   An action involving the internal organization of a business entity and the rights or obligations of shareholders, partners, members, owners, officers, directors, or managers;

■   An action arising out of a contractual agreement or other business dealings, including licensing, trade secrets, intellectual property, antitrust, securities, noncompete, non-solicitation, and confidentiality agreements;

☐   An action arising from a commercial transaction, including a commercial bank transaction;

☐   An action arising from a business or commercial insurance policy;

☐   An action involving commercial real estate;

☐   An action subject to compulsory arbitration involving any of the above subjects.

Approved, SCAO

| | | Original - Court | 2nd copy - Plaintiff |
|---|---|---|---|
| | | 1st copy - Defendant | 3rd copy - Return |

| STATE OF MICHIGAN JUDICIAL DISTRICT 17TH JUDICIAL CIRCUIT COUNTY | SUMMONS | CASE NO. 23-**12090**CBB |
|---|---|---|

Court address **180 Ottawa Ave NW**
**Grand Rapids, Michigan 49503**

Court telephone no.
**(616) 632-5220**

Plaintiff's name, address, and telephone no.
**Joe Martino Counseling, LLC**
**c/o Plaintiff's attorney**

v

Defendant's name, address, and telephone no.
**Tebra Technologies, Inc**
**c/o Incorporating Services, LTD**
**40600 Ann Arbor Rd E, Ste 200**
**Plymouth, Michigan 48170**

Plaintiff's attorney, bar no., address, and telephone no.
**Michelle M. McLean, P71393**
**3996 Chicago Dr SW**
**Grandville, Michigan 49418**
**(616) 531-7711**

*CURT A. BENSON*
*(P-38891)*

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**

☒ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____

The action ☐ remains ☐ is no longer  pending.

Summons section completed by court clerk.    **SUMMONS**

**NOTICE TO THE DEFENDANT**: In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside of Michigan).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date **DEC 0 8 2023** | Expiration date* **MAR 0 8 2024** | Court clerk **LISA POSTHUMUS LYONS** |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01   (3/23)  **SUMMONS**

MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

Summons   (3/23)

Case No. 23- **1 2 0 9** CBB

## PROOF OF SERVICE

**TO PROCESS SERVER**: You must serve the summons and complaint and file proof of service with the court clerk before the expiration date on the summons. If you are unable to complete service, you must return this original and all copies to the court clerk.

## CERTIFICATE OF SERVICE / NONSERVICE

☐ I served   ☐ personally   ☐ by registered or certified mail, return receipt requested, and delivery restricted to the addressee (copy of return receipt attached)   a copy of the summons and the complaint, together with the attachments listed below, on:

☐ I have attempted to serve a copy of the summons and complaint, together with the attachments listed below, and have been unable to complete service on:

| Name | Date and time of service |
|---|---|
| Place or address of service | |
| Attachments (if any) | |

☐ I am a sheriff, deputy sheriff, bailiff, appointed court officer or attorney for a party.

☐ I am a legally competent adult who is not a party or an officer of a corporate party. I declare under the penalties of perjury that this certificate of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled | Fee $ | | Signature |
|---|---|---|---|---|
| Incorrect address fee $ | Miles traveled | Fee $ | TOTAL FEE $ | Name (type or print) |

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of a copy of the summons and complaint, together with

Attachments (if any) _____ on _____

Date and time

Signature _____ on behalf of _____

Name (type or print) _____

MCL 600.1910, MCR 2.104, MCR 2.105

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF KENT

JOE MARTINO COUNSELING, PLLC,

     Plaintiff,

v.

TEBRA TECHNOLOGIES, INC.,

     Defendant,

Case No:  23- **1 2 0 9 0**-CBB

HON.

CURT A. BENSON
(P-38891)

---

Michelle M. McLean (P71393)
Matthew F. Burns (P75281)
BOLHOUSE, HOFSTEE & MCLEAN, P.C.
Attorneys for Plaintiff
3996 Chicago Drive S.W.
Grandville, Michigan 49418
(616) 531-7733

---

**PLAINTIFF'S VERIFIED COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND
BREACH OF CONTRACT AND REQUEST FOR TEMPORARY RESTRAINING ORDER**

THERE IS NO OTHER PENDING OR RESOLVED CIVIL ACTION
ARISING OUT OF THE TRANSACTION OR OCCURRENCE AS
ALLEGED IN THE COMPLAINT.

NOW COMES Plaintiffs, Joe Martino Counseling, PLLC ("Martino Counseling") by and

through its attorneys, BOLHOUSE, HOFSTEE & MCLEAN, P.C., and for its Complaint for breach

of fiduciary duty and breach of contract against Tebra Technologies, Inc. ("Tebra") states as

follows:

**JURISDICTIONAL ALLEGATIONS**

1. Plaintiff, Joe Martino Counseling, PLLC ("Martino Counseling"), is a Professional Limited

   Liability Company registered in the State of Michigan, and which is situated in Kent County,

   Michigan.

2. Martino Counseling provides counseling and other mental health services.

3. Martino Counseling has only registered in the State of Michigan, and has not provided

   services in the State of California.

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

4.  Defendant, Tebra Technologies, Inc, is a California corporation registered to engage in commerce in the State of Michigan.

5.  Defendant Tebra does business all throughout the State of Michigan as well as in Kent County.

6.  The amount of damages exceed $25,000 and so jurisdiction in this Court is proper.

## FACTUAL ALLEGATIONS

7.  Martino Counseling originally contracted with Kareo Inc. ("Kareo") as its practice management provider in 2019.

8.  "Practice management" includes but is not limited to the billing for services, processing insurance claims, maintaining client scheduling, maintaining client confidential records, etc.

9.  In 2021, Kareo and PatientPop merged to form Tebra Technologies Inc. (See **Exhibit A-** Printout of webpages from www.kareo.com/hello-tebra).

10. Sometime in August of 2023, Tebra took over for Kareo (hereafter, "Tebra") and began managing Martino Counseling's account.

11. Martino Counseling has not executed any forms, renewal agreements, or updated contracts with Tebra.

12. When Martino Counseling requested that Tebra provide them with a copy of their signed contract, Tebra provided an unsigned contract effective June 2023, which Martino Counseling had not seen, been provided, nor agreed to in any way.  See **Exhibit B- Business Associate Agreement. (Note signed by Plaintiff)**

13. Martino Counseling did not retain, or did not receive a copy after requesting one from Defendant, of the any signed contract between Kareo and Martino Counseling which would have been in effect back in 2019.

14. The contract between Martino Counseling and Tebra became an "implied" contract for services due to the merger and due to the parties' failure to renew any written contract.

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

15. Martino Counseling relied upon Tebra's assurances that it was committed to "improving every step of the care journey for both providers and patients by becoming the digital backbone for practice success" and remained a client of Tebra under the implied contract terms. (**Ex. A.**)

16. Martino Counseling relied upon Tebra's claims of expertise in digital practice management to work as its agent in filing claims on its behalf with various health insurance companies in a timely fashion in order to obtain prompt payment for services rendered.

17. Through May 2023, when Tebra was operating as Kareo, Tebra timely filed and processed claims for Martino Counseling; moreover, the servicing of Martino Counseling's account by Tebra was acceptable.

18. In June 2023, however, *after Tebra officially took over for Kareo*, servicing issues started to occur.

19. By mid-August 2023, and despite being timely paid each month by Martino Counseling, Tebra was in breach of its agreement to manage Martin Counseling's practice.

20. Examples of Tebra's breach include but are not limited to failing to process Martino Counseling's claims to insurance companies for payment, failing to manage  patient scheduling, improperly designating payors of claims resulting in payments being sent to the wrong provider of services (i.e.-not Martino Counseling)-— all which resulted in lost or delayed income to Martino Counseling as well as lost good will from clients and issues with continuity of patient care.

21. Martino Counseling even had an employee-counselor resign from Martino Counseling because she was not receiving timely payment due to Tebra's failure to Martino Counseling's claims.

22. In October 2023, Tebra stopped filing and processing all claims on behalf of Martino Counseling without warning or notice.

23. Martino Counseling had diligently paid any and all monthly fees to Tebra through November 2023.

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

24. Martino Counseling contacted Tebra's customer service multiple times without any adequate assistance or acknowledgement of the above outlined issues.

25. Despite the fact that Martino Counseling had demanded that Tebra immediately cure their breach, Tebra refused to process any bills or claims.

26. Tebra's breach was so severe that Martino Counseling was having to take out loans to maintain sufficient cash flow in order to survive and fund its day-to-day operations.

27. On November 2, 2023, Erica Martino ("Erica"), the manager of Martino Counseling, emailed Jason Duson, her account representative at Tebra ("Jason") stating (**See Exhibit C**):

> Good Morning Jason,
>
> I am hoping you can help me. I am at my wits end with Tebra. My Blue Cross claims are once again messed up. I have 147 rejections. All the claims go out fine one week then the next week there is another issue. This has been going on about 6 weeks now. As a result, our company keeps needing to borrow money as these Tebra issues have now cost us over $50,000.
>
> I have called every day on the newest issue and can't get through. I even created an online case and haven't heard back. The case was created on Monday which means now there is no way I get money back on them by next week, which will once again cause me to not be able to pay my bills. A couple of my employees can't even get on the Tebra billing because of issues with Parrells not working.
>
> I have 4 providers that I am paying for that haven't been with me for a month now; however I can't remove them because I can't get my claims to go through.
>
> I feel like at this point Tebra needs to reimburse me for the lost revenue and not charge me for the employees that I have to keep on because of the billing issues.
>
> Let me know what Tebra is willing to do to help rectify this situation or I will have no other choice but to seek legal counsel.

28. On November 3, 2023, Jason acknowledged that Tebra had failed to process claims for Martino Counseling stating (**See Exhibit D**):

> Hi Erica,
>
> Thank you for making me aware of this issue. Could you please share the case numbers related to the Blue Cross rejections? I would be glad to escalate these cases to my management team and extend a credit to your account if the rejections are caused by a system error.

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

I reviewed some of the rejections and saw that the claim was accepted by the payer. However, at the account level, it states that the payer acknowledged/accepted the claim. Have you contacted the payer to confirm the accuracy of this information?

Our support team emailed the point of contact listed on case number 02940060 the new link to download Parallels. Please confirm receipt.

29. Only after Erica brought this to the attention of Tebra was the issue of the sitting, unprocessed claims escalated by Tebra.

30. Within an hour of the phone call from Erica to Tebra, all of the claims were sent and the Tebra employee acknowledged that the issue was on "Tebra's end" because of a "clearing house issue."

31. On November 7, 2023, Erica advised Jason via email that Joe Martino Counseling was going to sign up with another system for processing services, and she further advised that she would not pay the November invoice which would be due on November 10, 2023. **(Ex. D).**

Hi Jason,
We have signed an agreement with another system. I was told I would hear back on the issue on Friday. I just got a response asking me for the providers name. This has been unacceptable service. I do not want to pay another dime to Tebra including the invoice on the 10th. Tebra has cost me thousands of dollars in back up claims. I do have an attorney ready to help me with this situation. I do not want it to escalate. I am hoping we can resolve between us.

32. On November 7, 2023, Jason responded and told Erica that he did not have authority to cancel Martino Counseling's account saying (See **Exhibit E**):

Hi Erica,

Thank you for your email. I'm sorry to say that I don't have the authority to hold your payment or cancel your account. However, I can get our Loyalty team involved to assist you. I understand that you may be upset with our service, and I apologize for any inconvenience caused. Our Customer Care team has specific company guidelines and policies to help address issues and resolve them. A reminder that per our terms of service, we require at least 30-60 days' notice to cancel accounts. I have created a ticket with our Loyalty team regarding your request for a credit and your mention of signing an agreement with another system. Below is the case number for your reference. I will escalate this matter to ensure that someone contacts you immediately.

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

Let me know if you have any questions.

33. On November 10, 2023, Emayralin Temple ("Emma"), a Tebra customer "loyalty" specialist

emailed Erica and said (See **Exhibit F**):

Hello Erica.

Hope that my email finds you well.

This follow up email is regarding your cancellation request. We are very sorry about the inconvenience, it seems like there have been some issues with claims rejections, I'll be more than happy to connect you with a support representative.

In regards to your cancellation we do request a 30-60 days' notice, the account can be scheduled to cancel by 11/30/2023.

Let me know if you have any additional questions or concerns.

34. On November 10, 2023, Erica sent another email to Emma stating (**Ex. F**):

Thank you for providing me with a copy of the "Business Associate Agreement." Prior to yesterday, I had not received a copy of this agreement, and I never signed one. I am not bound by the terms of this agreement. In fact, the agreement that I had signed back in 2019 was the last one that I have a record of having signed. That agreement has already expired, and I am no longer required to give notice to terminate services.

If any agreement is to be inferred, then Tebra is the first breaching party. Tebra failed to timely process claims beginning in September 2023, causing my business to have to borrow to cover ordinary expenses that were typically covered through our incoming cash flow. I have numerous records of times where I reached out for help, only to wait days and days with no response or even an inadequate response considering the financial crisis caused by Tebra to my business.

I terminated my banking authorization and Tebra is no longer allowed to withdraw funds for services. If you wish to avoid a protracted breach of contract lawsuit, then please immediately do the following: (1) Provide my new claims processing company with direct access to ALL the data associated with my account at no extra cost to me; (2) continue to allow me to have access to your system through November 27; and (3) refund all or a portion of my payments for your services for September and October 2023. I am prepared to proceed with a law suit, if necessary, but wish to resolve this amicably.

Please advise asap as to Tebra's position and how Tebra wishes to proceed. Sincerely,

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

35. Emma did not respond to this email, and so Erica sent another email to her on November 15, 2023 stating (See **Exhibit G**):

> Hello Emayralin,
>
> I have not heard back from you yet. I really need the rest of my data which includes notes, insurance information and all the remaining documents and information associated with patient accounts. Your lack of response is holding up our practices ability to move our services to CureMD. The lack of response is also holding up our ability to ensure accurate and timely billing. Please advise Niven, who is Cc'd on this email when he can get the rest of the data and how that will come to him.

36. Counsel for Plaintiff also sent email on November 15, 2023 stating (See **Exhibit H**):

> Emayralin:
>
> Please be advised that Tebra's refusal to transfer the requested data to CureMD is clearly a demonstration of "bad faith."
>
> Please provide this data without further delay to avoid compounding damages.
>
> Regards,
> Michelle M. McLean, Esquire

37. On November 17, 2023, Emayralin emailed Erica and said, (See **Exhibit I**):

> Hello everyone.
>
> Hope that my email finds you well.
>
> As previously stated there is no contract attached to this account, expiration date was 5/31/2023. Regarding the data export I don't see a ticket request on file, if you like I can submit the request for you.
>
> The data team will get in contact with you to provide the information and the fee related to the services, the account is ready for cancellation 11/30/2023 if you wish to push back the cancellation, we can leave one provider active to keep access to the services.
>
> Please be aware that for any account changes we require at least a 10 day notice.

38. Erica responded (**Ex. I**):

> Emayralin,
> Thank you for responding. We have extracted most of our demographic data on our own. Could you please open a ticket for CureMD to have my documents and patient notes at no extra cost to me.

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

Tebra's inability to respond in a timely manner has caused my Go Live date with CureMD to be delayed until the first week of December. I received a notice today that my account is delinquent and if I do not pay Tebra my services will be interrupted. I will not be paying for anymore services and expect my account to remain open until all data is exported. I will be out of your system as soon as you cooperate in getting me the requested data.

Niven, from CureMD is copied on this email. He has my permission to receive my data for integration.

39. On November 17, 2023, Emayralin responded (**Ex. I**):

Hello Erica.

Unfortunately, We don't  provide free services for Data export and past due fees need to be paid to keep your on demand access.

Please let me know if you would like for me to submit the request for the data export, the process may take up to a month or two due to high volume.

40. On November 17, 2023 Erica provided all the contact information for CureMD to Tebra, and further advised Emayralin:  (**Exhibit J**)

Unfortunately, the date from the billing system that we were able to download is missing a lot of important patient information. Can you please assist [the new provider] in getting ALL our data. We would like this data by Monday. The longer it takes to provide this information the longer it will take us to be out of Tebra.

41. Despite Temple's first response advising that Tebra required a 30 day notice to cancel, and further advising that the online access to the account would continue until November 30, 2023, Martino Counseling's access to information on Tebra's site was cut-off on November 27, 2023.

42. On November 29, 2023, Erica emailed Tebra stating:(**Exhibit K**)

Emayralin,

I have not heard a reply from you in 10 days. My account now has been cancelled. I am requesting access to get my appointment data for the remainder of this week. None of your emails indicated that my access would be denied on the 27th. You said you require a 30-60 days' notice to end my account but you shut me out after two weeks of nonpayment? That is ridiculous. Please send me my data asap!

43. Emayralin responded (**Ex. K**):

Good Morning Erica.

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

> Hope all is well with you.
>
> As previously stated, in order for you to get access to the records there needs to be payment as we do not offer any services for free. And I don't have access or tools to provide those records. I did reach out to legal but haven't received a response, I can try again.

44. Tebra provided *no services* to Martino Counseling for the entire month of November 2023, yet demanded that Martino Counseling pay the November 2023 invoice so that Martino Counseling's new practice management provider, CureMD, could obtain Martino Counseling's data.

45. Tebra refused to provide Martino Counseling's "data" to Martino Counseling "for free" even *though this information was owned by Martino Counseling*. Also, Tebra's refusal directly interfered with the ability of Martino Counseling's new provider, CureMD,  to process the claims that Tebra failed and or refused to process.

46. To mitigate their damages and to allow them to process approximately $500,000 in unpaid claims, Martino Counseling paid the November invoice in the amount of $3,612.04 to Tebra on November 29, 2023 with the expectation that they would have access to their data <u>until December 10, 2023</u> (because the system had been previously billing from the 10th of the month to the 10th of the month). (**Exhibit L**-Invoice).

47. On November 29, 2023, Erica emailed Emayralin and said: (**Exhibit M**)

> I will pay the past balance and add it to our lawsuit. Since I am paying, I am requesting my access to the system remain available until after the completion of this billing cycle which is the 10th. I will no longer need any access to your system after that date.

48. After receiving the November payment on November 29, 20213 in the amount of $3,612.04, Tebra allowed Martino Counseling access to some of Martino Counseling's data, but Tebra told Martino Counseling that its access to the data would end on November 30, 2023—*which was nine days earlier than the historical monthly billing cycles.*

49. Tebra's conduct as outlined above amounts to a "bad faith breach."

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

50. Tebra's breach of its duties owed to Martino Counseling has caused Martino Counseling damages in excess of approximately $431,652 as of November 28, 2023 which includes but is not limited to: charges sitting in aging unable to be billed; interest on loans taken out to cover cash flow needs; lost wages over patients leaving the practice; revenue lost after being refused access to data; hours spent fixing issues; charges incurred to new provider to cure Tebra's errors; costs and fees incurred to cure damages and lost claims; damages from lost profits; and lost revenue due to resignation of counselors.

51. As stated above, Martino Counseling was forced to pay November 2023's invoice simply to obtain their account information because Erica could see that there was approximately $450,000.00 in claims that Tebra failed or refused to process.

52. Martino Counseling was forced to take out loans in order to survive their day-to-day operations and make their cash flow as a direct result of Tebra's breach and failure to process claims on behalf of Martino Counseling.  The interest on the loans amounts to $53,019.00 as of the date of this filing.

53. Martino Counseling has also incurred additional expenses from CureMD to fix the billing and other issues caused by Tebra's mistakes which as of the date of this filing totaling approximately $193,600.00.

54. Martino Counseling has also lost profits as of the date of this filing totaling approximately $110,438.00 for September, October, and November of 2023.

55. Martino Counseling lost a counselor who worked for them as a result of Tebra's failure to process claims, resulting in lost income and revenues to Martino Counseling.

56. Martino Counseling also suffered additional miscellaneous damages including loss of good will, loss of business, and loss of profits due to Tebra's breach.

57. Martino Counseling asserts that it has suffered approximately $881,652.00 in damages based on Tebra's breach, as of the date of this filing.

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

58. Tebra continues to withhold additional information, including the aforementioned approximately $450,000.00 in unbilled claims and refuses to cooperate with providing the information in a timely fashion to Martino Counseling.

## COUNT I : BREACH OF FIDUCIARY DUTY

59. Plaintiff restates the preceding paragraphs 1 through 58 as if fully stated herein.

60. Tebra was hired as an agent for Martino Counseling to handle matters such as billing, claims, and appointment schedule management.

61. Tebra failed in its duties on which Martino Counseling relied.

62. Tebra is the party that was fully in control of filing billing and claims to the proper providers or payors and has failed to obtain payment for Martino Counseling for months.

63. Tebra also is holding information, and billing charges that Martino Counseling could use to obtain income, hostage claiming that Martino Counseling is a breaching party.

64. Tebra has not acted in good faith with Martino Counseling's transfer of services to CureMD.

65. As a result of Tebra's actions, and inaction in regarding to billing and claims, Martino Counseling has suffered significant damages.

## COUNT II: BREACH OF IMPLIED CONTRACT

66. Plaintiff restates the preceding paragraphs 1 through 65 as if fully stated herein.

67. As outlined above, Martino Counseling and Tebra, formerly Kareo, entered into an express agreement in 2019.

68. Tebra was to provide such services as filing insurance claims, billing insurance providers, managing patient scheduling, and collecting patient billables in exchange for a monthly fee paid by Martino Counseling.

69. Martino Counseling has not signed any new contract with Tebra since its initial 2019 contract.

70. The 2019 contract expired in May 2023, and the Tebra and Martino Counseling ("the Parties") have been operating under an "implied" agreement.

71. Tebra was the first breaching party of the implied agreement between the Parties.

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

72. Martino Counseling has suffered significant damages as a result of Tebra's breach.

### COUNT III  REQUEST FOR TEMPORARY RESTRAINING ORDER

73. Plaintiff restates the preceding paragraphs 1 through 72 as if fully stated herein.

74. Plaintiff seeks a preliminary injunction against Defendant pursuant to MCR 3.310(B).

75. Pursuant to MCR 3.310(H), "a motion for injunction may …. be granted before or in connection with a final judgment on a motion filed after an action is commenced."

76. Plaintiff has a likelihood of success on the merits of the claim.

77. Plaintiff will suffer irreparable injury if the injunction is not granted.

78. The harm Plaintiff will suffer outweighs any harm that the Defendant will suffer if the injunction is entered.

79. The injunction is in the public interest.

80. The injunctive relief requested is not arbitrary, and is in accordance with the fixed principles of equity jurisdiction and the evidence in the case.

81. Plaintiff will be able to prove its claims by a preponderance of the evidence that the four elements favor issuance of an injunction. *Frey v Trinity Health-Michiga*n, No 359446 (Mich Ct App Dec 10, 2021) (unpublished) (citing MCR 3.310(A)(4); *Hammel v Speaker of the House of Representatives*, 297 Mich App 641, 648, 825 NW2d 616 (2012); *Dutch Cookie Mach Co v Vande Vrede*, 289 Mich 272, 280, 286 NW 612 (1939)).

82. Plaintiff's counsel has already requested Defendant's compliance to provide Plaintiff with the data but the request has been ignored or denied. (**Ex. H; Exhibit N-Email from undersigned attorney).**

83. Defendant must be immediately enjoined from withholding billing, patient, scheduling, and any other information or data related to Martino Counseling that is currently in the possession of Defendant.

84. Defendant must preserve any and all records of Martino Counseling whether held digitally, physically, or otherwise by Defendant.

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

**EXHIBIT A**





OUR MISSION

# To unlock better healthcare by helping independent practices bring modernized care to patients everywhere.

In 2021, Kareo, a leader in cloud-based clinical and financial software, merged with PatientPop, a leader in practice growth technology, to form Tebra, the digital backbone for practice success. Today, Tebra is committed to improving every step of the care journey for both providers and patients.

Our website uses cookies to improve your experience. By continuing to use our site, you accept the use of cookies and our Website Privacy Policy   

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC



**HOW WE WORK**

# As Tebra, we're raising the bar for digital healthcare enablement and centering the patient experience

We've developed a culture of vision and purpose, creating an atmosphere of innovation and discovery for each team member to embrace. Our values guide and grow us every day.

Our website uses cookies to improve your experience. By continuing to use our site, you accept the use of cookies and our Website Privacy Policy  GOT IT!

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

Kareo and PatientPop are now Tebra. Learn more.

SEARCH    PRACTICE LOGIN    PATIENT PORTAL    DOWNLOAD PM    (866) 93-TEBRA (83272)    LIVE CHAT

 kareo
a tebra company

Solutions    Products    About    Resources    Support    GET DEMO    VIEW PRICING



Our insights into the business of healthcare educate independent practices



Our investments in product discovery create innovative solutions

Visit Tebra Product Tour (https://www.tebra.com/product-tour/)

## tebra by the numbers

| | |
|---|---|
| **85 million** | **470,000** |
| Patients | Tebra users |
| **107,000** | **43,000** |
| Providers and growing | Practices run on Tebra |
| **1,000+** | **3** |
| Tebra employees | Locations |

Our website uses cookies to improve your experience. By continuing to use our site, you accept the use of cookies and our Website Privacy Policy    GOT IT!

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

Kareo and PatientPop are now Tebra. Learn more.

Q SEARCH    PRACTICE LOGIN    PATIENT PORTAL    DOWNLOAD PM    (866) 93-TEBRA (83272)    LIVE CHAT

kareo
a tebra company

Solutions      Products      About      Resources      Support      GET DEMO      VIEW PRICING

Get Demo (f)

## The combined power of Kareo and PatientPop

As leaders in clinical, financial, and practice growth technology, Kareo and PatientPop have joined forces as Tebra to support the connected practice of the future and modernize every step of the patient journey.

Learn more https://www.tebra.com/tebra-story/

Our website uses cookies to improve your experience. By continuing to use our site, you accept the use of cookies and our Website Privacy Policy    GOT IT!

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

Kareo and PatientPop are now Tebra. Learn more.



🔍 SEARCH    PRACTICE LOGIN    PATIENT PORTAL    DOWNLOAD PM    (866) 93-TEBRA (83272)    LIVE CHAT

Solutions    Products    About    Resources    Support    GET DEMO    

A TEBRA COMPANY

# A new era of healthcare, a new world of practice well-being

Tebra is the result of two companies joining forces to support the connected practice of the future



## The combined power of Kareo and PatientPop

As leaders in clinical, fi...
technology, Kareo and...
to support the connect...
modernize every step o...

Powering the connected practice of the future

We are committed to improving every step of the care journey for both providers and patients.

 + PATIENTPOP

Read the Tebra story

I am a customer and need support

Chat now with sales

I am a patient and need support

Kareo and PatientPop are now Tebra

Privacy policy

Our website uses cookies to improve your experience. By continuing to use our site, you accept the use of cookies a...

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

Dan Rodrigues



WHO WE ARE

# In 2021, healthcare practice technology leaders Kareo and PatientPop came **together to form Tebra.**

Today, Tebra is committed to improving every step of the care journey for both providers and patients by becoming the digital backbone for practice success.

**Learn more about Tebra** (https://tebra.com?
utm_source=Inbound&utm_medium=Website&utm_campaign=PP-customer-page)

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC



**CUSTOMER STORY**

# Thousands of providers trust PatientPop.
## And so does Kareo.

PatientPop is the most complete practice growth technology, with a HIPAA-compliant platform that helps thousands of providers promote their practice, attract and acquire patients, and retain them for life — all with far less work.

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

THANK YOU

# Without you, we wouldn't be here.

We started Kareo because we believed that it's not enough for today's healthcare practices to survive, they deserve to thrive. From our first meetings with the PatientPop team, it was immediately evident they were driven by that same vision. Tebra (inspired by "vertebra"), represents a new era for both teams as we come together, pool our resources, and better ensure that this vision becomes a reality for the countless healthcare workers we depend on.

Our current Kareo and PatientPop customers have our profound gratitude as we enter this new stage and we hope that you'll continue to grow with us as Tebra sets a new standard for practice well-being.



WATCH VIDEO

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC



"

PatientPop helped us increase web traffic and appointment volume. In one year, they helped generate **over 5,000 new patient bookings."**

Jinous Rouhani
CEO, Austin Area OB-GYN & Fertility

**5k**
New Patient bookings

**470k**
Users

**107k**
Providers

**42k**
Practices

**1k**
Tebra emplyees

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

# Learn more about Tebra and the connected practice of the future.




Our story (https://www.tebra.om/tebra-story?
utm_source=inbound&utm_medium=Website&utm_campaign=K-customer-page)

kareo
a tebra company

All Rights Reserved © 2022 Privacy Policy ()

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

# The combined power of Kareo and PatientPop

As leaders in clinical, financial, and practice growth technology, Kareo and PatientPop have joined forces as Tebra to support the connected practice of the future and modernize every step of the patient journey.

Learn more (https://www.tebra.com/tebra-story/)

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC



# Business Associate Agreement

This Business Associate Agreement (the "Agreement") shall be incorporated into the Terms of Service Agreement for Customers that are Covered Entities (as defined in the HIPAA Rules) and that provide Protected Health Information ("PHI") (as defined in the HIPAA Rules) to Tebra Technologies, Inc. and its subsidiaries ("Tebra" or "Business Associate") in connection with the software and services they have purchased.

## Recitals

WHEREAS, Covered Entity possesses Individually Identifiable Health Information that is protected under the federal Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), the Health Information Technology for Economic and Clinical Health Act ("HITECH"), the U.S. Department of Health and Human Services issued Standards for Privacy of Individually Identifiable Health Information (the "Privacy Rule"), Security Standards for the Protection of Electronic Protected Health Information (the "Security Rule") and Breach Notification Standards for Unsecured Protected Health Information (the "Breach Notification Rule") at 45 CFR parts 160 and 164 (collectively the "HIPAA Rules");

WHEREAS, in order to ensure that Covered Entity and Business Associate remain in compliance with the HIPAA Rules and other applicable federal and state laws and regulations regarding the disclosure of PHI to Business Associate, the parties have agreed to enter into this Agreement;

NOW THEREFORE, Covered Entity and Business Associate agree as follows:

## 1. Definitions

Capitalized terms used, but not otherwise defined, in this Agreement shall have the same meaning as those terms in the HIPAA Rules, and if no such definition is provided in such rules, then the meaning shall be that given to such capitalized term in the Terms of Service Agreement to which this Agreement is incorporated.

## 2. Tebra Obligations and Activities

The obligations and activities of the Business Associate, as required by the Health Insurance Portability and Accountability Act (HIPAA), as amended by the Health Information and Technology for Economic and Clinical Health ("HITECH Act") and in regulations promulgated thereunder, are as follows:

1



DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

1. Business Associate agrees to not use or disclose Protected Health Information other than (i) as permitted or required by the Agreement or as Required by Law; or (ii) as otherwise authorized by Covered Entity.
2. Business Associate agrees to use appropriate safeguards to prevent use or disclosure of the PHI other than as provided for by this Agreement.
3. Business Associate agrees to mitigate, to the extent practicable, any harmful effect that is known to Business Associate of a use or disclosure of PHI by Business Associate in violation of the requirements of this Agreement.
4. Business Associate agrees to report to Covered Entity any use or disclosure of the PHI not provided for by this Agreement of which it becomes aware.
5. Business Associate agrees to ensure that any subcontractor that creates, receives, maintains, or transmits electronic PHI originating from the Covered Entity on behalf of the Business Associate, agrees to substantially the same restrictions and conditions that apply through this Agreement to Business Associate with respect to such information.
6. Business Associate agrees to provide access, at the request of Covered Entity to PHI in a Designated Record Set, to Covered Entity or, as directed by Covered Entity, to an Individual in in a time and manner that allows Covered Entity to meet the requirements under 45 CFR § 164.524.
7. Business Associate agrees to make any amendment(s) to PHI in a Designated Record Set that the Covered Entity directs or agrees to pursuant to 45 CFR § 164.526 at the request of Covered Entity, in a time and manner that allows a Covered Entity to meet the requirements of 45 CFR 164.526 and in the time and manner of within thirty (30) days.
8. Business Associate agrees to make internal practices, books, and records relating to the use and disclosure of PHI received from, or created or received by Business Associate on behalf of Covered Entity, available to the Secretary, for purposes of the Secretary determining compliance with the Privacy Rule.
9. Business Associate agrees to document such disclosures of PHI and information related to such disclosures as would be required for Covered Entity to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with 45 CFR § 164.528.
10. Upon request of Covered Entity, Business Associate agrees to provide to Covered Entity or an Individual, information collected in accordance with Section 2 (ix) of this Agreement, as necessary to permit Covered Entity to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with 45 CFR § 164.528.

2



11. Business Associate agrees to implement administrative, physical, and technical safeguards that reasonably and appropriately protect the confidentiality, integrity, and availability of the electronic PHI that it creates, receives, maintains, or transmits on behalf of the Covered Entity in accordance with the 45 CFR 164.306 (the HIPAA Security standards).

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

12. Business Associate shall report to the Covered Entity any use or disclosure of PHI not permitted by this Agreement. Business Associate shall report any Breach of Unsecured PHI to Covered Entity in a manner that is in compliance with its obligations pursuant to 45 CFR §164.410.
13. Business Associate shall report a successful Security Incident in accordance with Section xii above and shall report unsuccessful Security Incidents upon request of Covered Entity.
14. When using, disclosing or requesting PHI, Business Associate agrees to use, disclose or request the minimal amount of information necessary for the stated purpose, unless an exception to the minimum necessary rule, as set forth in 45 CFR §164.502(b)(2).

3. Permitted Uses and Disclosures

The permitted uses and disclosures of the Business Associate, as required by the Health Insurance Portability and Accountability Act (HIPAA) and in regulations promulgated thereunder, are as follows:

1. Except as otherwise limited in this Agreement, Business Associate may use or disclose PHI to perform functions, activities, or services for, or on behalf of, Covered Entity as specified in the Terms of Services Agreement and this Agreement, provided that such use or disclosure would not violate the Privacy Rule if done by Covered Entity or the minimum necessary policies and procedures of the Covered Entity.
2. Except as otherwise limited in this Agreement, Business Associate may use or disclose PHI for the proper management and administration of the Business Associate or to carry out the legal responsibilities of the Business Associate provided that disclosures are Required By Law, or Business Associate obtains reasonable assurances from the person to whom the information is disclosed that it will remain confidential and used or further disclosed only as Required By Law or for the purpose for which it was disclosed to the person, and the person notifies the Business Associate of any instances of which it is aware in which the confidentiality of the information has been breached.

3



c. Except as otherwise limited in this Agreement, Business Associate may use PHI to provide Data Aggregation services to Covered Entity as permitted by 45 CFR § 164.504(e)(2)(i)(B).

4. Business Associate may use PHI to de-identify the information in accordance with 45 CFR 164.514(a)-(c), and shall retain any and all ownership claims relating to the de-identified data it creates from such PHI.
5. Business Associate may use PHI to report violations of law to appropriate Federal and State authorities, consistent with § 164.502(j)(1).

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

4. Covered Entity's Obligations

The obligations of Covered Entity, as required by HIPAA and in regulations promulgated thereunder, are as follow:

1. To the extent that Covered Entity utilizes services provided by the Business Associate to communicate with patients, Covered Entity is responsible for obtaining and documenting authorizations or requests from patients to communicate through this service and to inform patient of risks associated with such communications as applicable. It shall be Covered Entity's responsibility to determine what permissions, authorizations or consents shall be documented and maintained for HIPAA compliance purposes. Business Associate does not obtain consent, authorization or permission from patients and the parties agree that is not Business Associate's obligation to do so or to document or maintain any consent, authorization or permission obtained from patients.

2. Covered Entity shall notify Business Associate of any limitation(s) in its notice of privacy practices of Covered Entity in accordance with 45 CFR § 164.520, to the extent that such limitation may affect Business Associate's use or disclosure of PHI.

3. Covered Entity shall notify Business Associate of any changes in, or revocation of, permission by Individual to use or disclose PHI, to the extent that such changes may affect Business Associate's use or disclosure of PHI.

4. Covered Entity shall notify Business Associate of any restriction to the use or disclosure of PHI that Covered Entity has agreed to in accordance with 45 CFR § 164.522, to the extent that such restriction may affect Business Associate's use or disclosure of PHI.

5. Covered Entity shall not request Business Associate to use or disclose PHI in any manner that would not be permissible under the Privacy Rule if done by Covered Entity.

4



f. Covered Entity agrees to comply with the HIPAA Security Rule, including, without limitation, safeguarding all computers, laptops, cell phones, tablets, or other mobile devices in accordance with the HIPAA Security Regulations.

5. Term and Termination

1. The term of this Agreement shall be effective as effective time contemplated by the Terms of Service Agreement to which this Agreement is incorporated, and shall terminate when all of the PHI provided by Covered Entity to Business Associate, or created or received by Business Associate on behalf of Covered Entity, is destroyed or returned to Covered Entity, or, if it is infeasible to return or destroy PHI, protections are extended to such information, in accordance with the termination provisions in this Section.

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

2. Termination For Cause. In addition to any termination rights set forth in the Terms of Service Agreement, in the event of a material breach of this Agreement, the other party shall either: (i) provide the breaching party with an opportunity to cure the breach or end the violation, and terminate the Agreement (including this Agreement) if the breaching party does not cure the breach or end the violation within sixty (60) days, or (ii) immediately terminate the Terms of Service Agreement (and this Agreement) if cure is not possible.

3. Termination upon Issuance of Guidance or Change In Law. If the Secretary provides additional guidance, clarification or interpretation on the Privacy Rule, or there is a change or supplement to the HIPAA statutes or regulations (both referred to as a "HIPAA Change"), such that a party hereto determines that the service relationship between Business Associate and Covered Entity is no longer a Business Associate relationship as defined in HIPAA, such party shall provide written notice to the other party of the HIPAA Change, and upon mutual agreement of the parties that the HIPAA Change renders this BA Agreement unnecessary, this Agreement shall terminate and be null and void.

4. The respective rights and obligations of Business Associate under this Section 5 of this Agreement shall survive the termination of this Agreement for any reason.

6. Other

1. The parties agree to take such action as is necessary to amend this Agreement from time to time as is necessary for Covered Entity to comply with the requirements of the HIPAA Rules and the HIPAA.

2. The parties agree that Business Associate may unilaterally amend this Agreement from time to time for the reasons set forth in the above paragraphs

5



and for other business reasons and that any such amended agreement which

Business Associate signs on a later date will supersede this Agreement.

c. Any ambiguity in this Agreement shall be resolved to permit Covered Entity to

comply with the HIPAA Rules.

4. The terms Covered Entity and Business Associate are used in this Agreement

only for purposes of convenience and are not meant to imply that either party would meet the definition of Covered Entity or Business Associate set forth in the HIPAA regulations.

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

5. To the extent not preempted by Federal law, this Agreement shall be governed and construed in accordance with the state laws governing the Terms of Service Agreement, without regard to conflicts of laws provisions that would require application of the law of another state.
6. This Agreement does not and is not intended to confer any rights or remedies upon any person other than the parties.
7. This Agreement supersedes and replaces any prior business associate agreements between the Covered Entity and Business Associate, including any of Tebra's subsidiaries as of the date set forth below.

IN WITNESS WHEREOF, the parties hereto have executed this Confidentiality Agreement as of the date of last signature below.

Covered Entity

Business Associate

Tebra Technologies, Inc. (f/k/a Kareo, Inc.)

*Colin Morris*

By:

Name:

Title:

Date:

By:

Name: Colin Morris

Title: General Counsel

Date: June 1, 2023

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC



6

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

## Business Associate Agreement

This Business Associate Agreement (the "Agreement") shall be incorporated into the Terms of Service Agreement for Customers that are Covered Entities (as defined in the HIPAA Rules) and that provide Protected Health Information ("PHI") (as defined in the HIPAA Rules) to Tebra Technologies, Inc. and its subsidiaries ("Tebra" or "Business Associate") in connection with the software and services they have purchased.

## Recitals

WHEREAS, Covered Entity possesses Individually Identifiable Health Information that is protected under the federal Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), the Health Information Technology for Economic and Clinical Health Act ("HITECH"), the U.S. Department of Health and Human Services issued Standards for Privacy of Individually Identifiable Health Information (the "Privacy Rule"), Security Standards for the Protection of Electronic Protected Health Information (the "Security Rule") and Breach Notification Standards for Unsecured Protected Health Information (the "Breach Notification Rule") at 45 CFR parts 160 and 164 (collectively the "HIPAA Rules");

WHEREAS, in order to ensure that Covered Entity and Business Associate remain in compliance with the HIPAA Rules and other applicable federal and state laws and regulations regarding the disclosure of PHI to Business Associate, the parties have agreed to enter into this Agreement;

NOW THEREFORE, Covered Entity and Business Associate agree as follows:

### 1. Definitions
Capitalized terms used, but not otherwise defined, in this Agreement shall have the same meaning as those terms in the HIPAA Rules, and if no such definition is provided in such rules, then the meaning shall be that given to such capitalized term in the Terms of Service Agreement to which this Agreement is incorporated.

### 2. Tebra Obligations and Activities
The obligations and activities of the Business Associate, as required by the Health Insurance Portability and Accountability Act (HIPAA), as amended by the Health Information and Technology for Economic and Clinical Health ("HITECH Act") and in regulations promulgated thereunder, are as follows:

1



DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

1. Business Associate agrees to not use or disclose Protected Health Information other than (i) as permitted or required by the Agreement or as Required by Law; or (ii) as otherwise authorized by Covered Entity.
2. Business Associate agrees to use appropriate safeguards to prevent use or disclosure of the PHI other than as provided for by this Agreement.
3. Business Associate agrees to mitigate, to the extent practicable, any harmful effect that is known to Business Associate of a use or disclosure of PHI by Business Associate in violation of the requirements of this Agreement.
4. Business Associate agrees to report to Covered Entity any use or disclosure of the PHI not provided for by this Agreement of which it becomes aware.
5. Business Associate agrees to ensure that any subcontractor that creates, receives, maintains, or transmits electronic PHI originating from the Covered Entity on behalf of the Business Associate, agrees to substantially the same restrictions and conditions that apply through this Agreement to Business Associate with respect to such information.
6. Business Associate agrees to provide access, at the request of Covered Entity to PHI in a Designated Record Set, to Covered Entity or, as directed by Covered Entity, to an Individual in in a time and manner that allows Covered Entity to meet the requirements under 45 CFR § 164.524.
7. Business Associate agrees to make any amendment(s) to PHI in a Designated Record Set that the Covered Entity directs or agrees to pursuant to 45 CFR § 164.526 at the request of Covered Entity, in a time and manner that allows a Covered Entity to meet the requirements of 45 CFR 164.526 and in the time and manner of within thirty (30) days.
8. Business Associate agrees to make internal practices, books, and records relating to the use and disclosure of PHI received from, or created or received by Business Associate on behalf of Covered Entity, available to the Secretary, for purposes of the Secretary determining compliance with the Privacy Rule.
9. Business Associate agrees to document such disclosures of PHI and information related to such disclosures as would be required for Covered Entity to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with 45 CFR § 164.528.
10. Upon request of Covered Entity, Business Associate agrees to provide to Covered Entity or an Individual, information collected in accordance with Section 2 (ix) of this Agreement, as necessary to permit Covered Entity to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with 45 CFR § 164.528.

2



11. Business Associate agrees to implement administrative, physical, and technical safeguards that reasonably and appropriately protect the confidentiality, integrity, and availability of the electronic PHI that it creates, receives, maintains, or transmits on behalf of the Covered Entity in accordance with the 45 CFR 164.306 (the HIPAA Security standards).

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

12. Business Associate shall report to the Covered Entity any use or disclosure of PHI not permitted by this Agreement. Business Associate shall report any Breach of Unsecured PHI to Covered Entity in a manner that is in compliance with its obligations pursuant to 45 CFR §164.410.
13. Business Associate shall report a successful Security Incident in accordance with Section xii above and shall report unsuccessful Security Incidents upon request of Covered Entity.
14. When using, disclosing or requesting PHI, Business Associate agrees to use, disclose or request the minimal amount of information necessary for the stated purpose, unless an exception to the minimum necessary rule, as set forth in 45 CFR §164.502(b)(2).

## 3. Permitted Uses and Disclosures

The permitted uses and disclosures of the Business Associate, as required by the Health Insurance Portability and Accountability Act (HIPAA) and in regulations promulgated thereunder, are as follows:

1. Except as otherwise limited in this Agreement, Business Associate may use or disclose PHI to perform functions, activities, or services for, or on behalf of, Covered Entity as specified in the Terms of Services Agreement and this Agreement, provided that such use or disclosure would not violate the Privacy Rule if done by Covered Entity or the minimum necessary policies and procedures of the Covered Entity.
2. Except as otherwise limited in this Agreement, Business Associate may use or disclose PHI for the proper management and administration of the Business Associate or to carry out the legal responsibilities of the Business Associate provided that disclosures are Required By Law, or Business Associate obtains reasonable assurances from the person to whom the information is disclosed that it will remain confidential and used or further disclosed only as Required By Law or for the purpose for which it was disclosed to the person, and the person notifies the Business Associate of any instances of which it is aware in which the confidentiality of the information has been breached.

3



c. Except as otherwise limited in this Agreement, Business Associate may use PHI to provide Data Aggregation services to Covered Entity as permitted by 45 CFR § 164.504(e)(2)(i)(B).

4. Business Associate may use PHI to de-identify the information in accordance with 45 CFR 164.514(a)-(c), and shall retain any and all ownership claims relating to the de-identified data it creates from such PHI.
5. Business Associate may use PHI to report violations of law to appropriate Federal and State authorities, consistent with § 164.502(j)(1).

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

4. Covered Entity's Obligations

The obligations of Covered Entity, as required by HIPAA and in regulations promulgated thereunder, are as follow:

1. To the extent that Covered Entity utilizes services provided by the Business Associate to communicate with patients, Covered Entity is responsible for obtaining and documenting authorizations or requests from patients to communicate through this service and to inform patient of risks associated with such communications as applicable. It shall be Covered Entity's responsibility to determine what permissions, authorizations or consents shall be documented and maintained for HIPAA compliance purposes. Business Associate does not obtain consent, authorization or permission from patients and the parties agree that is not Business Associate's obligation to do so or to document or maintain any consent, authorization or permission obtained from patients.

2. Covered Entity shall notify Business Associate of any limitation(s) in its notice of privacy practices of Covered Entity in accordance with 45 CFR § 164.520, to the extent that such limitation may affect Business Associate's use or disclosure of PHI.

3. Covered Entity shall notify Business Associate of any changes in, or revocation of, permission by Individual to use or disclose PHI, to the extent that such changes may affect Business Associate's use or disclosure of PHI.

4. Covered Entity shall notify Business Associate of any restriction to the use or disclosure of PHI that Covered Entity has agreed to in accordance with 45 CFR § 164.522, to the extent that such restriction may affect Business Associate's use or disclosure of PHI.

5. Covered Entity shall not request Business Associate to use or disclose PHI in any manner that would not be permissible under the Privacy Rule if done by Covered Entity.

4



f. Covered Entity agrees to comply with the HIPAA Security Rule, including, without limitation, safeguarding all computers, laptops, cell phones, tablets, or other mobile devices in accordance with the HIPAA Security Regulations.

5. Term and Termination

1. The term of this Agreement shall be effective as effective time contemplated by the Terms of Service Agreement to which this Agreement is incorporated, and shall terminate when all of the PHI provided by Covered Entity to Business Associate, or created or received by Business Associate on behalf of Covered Entity, is destroyed or returned to Covered Entity, or, if it is infeasible to return or destroy PHI, protections are extended to such information, in accordance with the termination provisions in this Section.

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

2. Termination For Cause. In addition to any termination rights set forth in the Terms of Service Agreement, in the event of a material breach of this Agreement, the other party shall either: (i) provide the breaching party with an opportunity to cure the breach or end the violation, and terminate the Agreement (including this Agreement) if the breaching party does not cure the breach or end the violation within sixty (60) days, or (ii) immediately terminate the Terms of Service Agreement (and this Agreement) if cure is not possible.

3. Termination upon Issuance of Guidance or Change In Law. If the Secretary provides additional guidance, clarification or interpretation on the Privacy Rule, or there is a change or supplement to the HIPAA statutes or regulations (both referred to as a "HIPAA Change"), such that a party hereto determines that the service relationship between Business Associate and Covered Entity is no longer a Business Associate relationship as defined in HIPAA, such party shall provide written notice to the other party of the HIPAA Change, and upon mutual agreement of the parties that the HIPAA Change renders this BA Agreement unnecessary, this Agreement shall terminate and be null and void.

4. The respective rights and obligations of Business Associate under this Section 5 of this Agreement shall survive the termination of this Agreement for any reason.

6. Other

1. The parties agree to take such action as is necessary to amend this Agreement from time to time as is necessary for Covered Entity to comply with the requirements of the HIPAA Rules and the HIPAA.

2. The parties agree that Business Associate may unilaterally amend this Agreement from time to time for the reasons set forth in the above paragraphs

5



and for other business reasons and that any such amended agreement which

Business Associate signs on a later date will supersede this Agreement.
c. Any ambiguity in this Agreement shall be resolved to permit Covered Entity to

comply with the HIPAA Rules.

4. The terms Covered Entity and Business Associate are used in this Agreement

only for purposes of convenience and are not meant to imply that either party would meet the definition of Covered Entity or Business Associate set forth in the HIPAA regulations.

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

5. To the extent not preempted by Federal law, this Agreement shall be governed and construed in accordance with the state laws governing the Terms of Service Agreement, without regard to conflicts of laws provisions that would require application of the law of another state.
6. This Agreement does not and is not intended to confer any rights or remedies upon any person other than the parties.
7. This Agreement supersedes and replaces any prior business associate agreements between the Covered Entity and Business Associate, including any of Tebra's subsidiaries as of the date set forth below.

IN WITNESS WHEREOF, the parties hereto have executed this Confidentiality Agreement as of the date of last signature below.

_____

Covered Entity

Business Associate

Tebra Technologies, Inc. (f/k/a Kareo, Inc.)

*Colin Morris*

By:

Name:

Title:

Date:

By:

Name: Colin Morris

Title: General Counsel

Date: June 1, 2023

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC



6

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

# Tebra Terms of Service

PLEASE READ THESE TERMS OF SERVICE CAREFULLY BEFORE USING THIS SERVICE. KAREO AND PATIENTPOP HAVE JOINED FORCES AS TEBRA TO UNLOCK BETTER HEALTHCARE WITH AN OPERATING SYSTEM FOR THE CONNECTED PRACTICE OF THE FUTURE. AS PART OF THIS EXCITING TRANSITION, WE ARE UNIFYING OUR TERMS OF SERVICE TO IMPROVE OUR USER EXPERIENCE AND CLEARLY CONVEY YOUR AND OUR RIGHTS AND RESPONSIBILITIES. EFFECTIVE JUNE 1, 2023, THE TEBRA TERMS OF SERVICE SET FORTH BELOW WILL SUPERSEDE AND REPLACE THE CURRENT KAREO TERMS OF SERVICE AND THE PATIENTPOP TERMS OF SERVICE. THESE TERMS OF SERVICE ARE BY AND BETWEEN TEBRA TECHNOLOGIES, INC., INCLUDING ITS SUBSIDIARY, PATIENTPOP, INC. (TEBRA) AND THE INDIVIDUAL(S) OR ENTITY(IES) NAMED ON ONE OR MORE ORDER FORMS OR SUBSCRIPTION AGREEMENTS WITH TEBRA (THE CUSTOMER). BY USING THE SERVICES DESCRIBED BELOW, CLICKING A BOX INDICATING ACCEPTANCE, OR EXECUTING AN ORDER FORM OR SUBSCRIPTION AGREEMENT REFERENCING THESE TERMS OF SERVICE, CUSTOMER IS AGREEING TO BE BOUND BY THESE TERMS OF SERVICE. IF YOU DO NOT AGREE TO THESE TERMS OF SERVICE, DO NOT SUBSCRIBE TO, ACCESS, OR USE THE SERVICE.

## 1) TEBRA SOFTWARE SERVICES

- These Terms of Service provide the Customer with access and use of Tebra's services, as specified on the applicable order form or subscription agreement between the parties. These Terms of Service, along with the applicable order form or subscription agreement, are referred to herein collectively as the **Customer Agreement.** Customer may purchase services across Tebra's solutions offerings, which are collectively referred to as the **Service.**

- **Policies.** Customer understands that use of the Service is also governed by our Privacy Policy, Pricing Policy, Business Associate Agreement, Support Policy, and Security Notice, as they each may be modified over time.

## 2) RESPONSIBILITIES

### a) Tebra Support Responsibilities

#### i) Support

Tebra will provide customer support for the Service as further detailed in the Support Policy.

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

## b) Customer Responsibilities

### i) Access by Employees and Contractors

- Customer may not make the Service available to anyone other than its employees and contractors and will do so solely to access the Service for the benefit of Customer in compliance with the terms of these Terms of Service.
- Customer is responsible for the compliance with these Terms of Service by its employees and contractors.

### ii) Restrictions

Customer may not:

- sell, resell, rent, or lease the Service, or use the Service beyond its internal operations;
- use the Service to store or transmit unsolicited marketing emails or infringing, libelous, or otherwise unlawful or tortious material, or to store or transmit material in violation of third-party rights (including without limitation any privacy rights);
- interfere with or disrupt the integrity or performance of the Service;
- attempt to gain unauthorized access to the Service or its related systems or networks;
- modify, copy the Service, or create derivative works based on the Service or any part, feature, function, or user interface;
- except to the extent permitted by applicable law, disassemble, reverse engineer, or decompile the Service or remove or modify any proprietary marking or restrictive legends in the Service;
- use the Service in violation of any law; or
- access the Service to build a competitive service or offering.

## c) Customer Information

### i) Customer Information

All data, information, images, documentation, and files entered or uploaded by Customer to the Service remains the property of Customer, as between Tebra and Customer (Customer Information), subject to the other terms of these Terms of Service.

### ii) License to Use Customer Information

Customer grants Tebra a non-exclusive, royalty-free, license to modify, store, transmit, and otherwise use the Customer Information for purposes of Tebra performing under these Terms of Service.

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

iii) Responsibility for Customer Information

Customer is solely responsible for Customer Information including, must use commercially reasonable efforts to prevent unauthorized access to the Service, must notify Tebra promptly of any known unauthorized access, and may use the Service only in accordance with its intended purposes and applicable law.

iv) Accuracy of Customer Information

Customer represents and warrants to Tebra that all Customer Information, and any other material provided under Customer's account, by Customer or on its behalf, is true, correct, and accurate. If Customer learns that any Customer Information provided to Tebra as part of the Service is not true, correct or accurate, Customer must immediately notify Tebra by phone and in writing of this fact, and provide the true, correct and accurate information to Tebra. Tebra relies on Customer representations regarding the truth, accuracy and compliance with laws concerning Customer Information. TEBRA IS NOT LIABLE FOR ANY LOSS OR DAMAGE CAUSED BY CUSTOMER'S FAILURE TO COMPLY WITH THIS PARAGRAPH, IRRESPECTIVE OF ANY ACT OR OMISSION ON THE PART OF TEBRA.

d) 'Tebra Clinical' Service Offering – Additional Terms.

i) Electronic Prescriptions for Controlled Substances

If Customer uses the Services for Electronic Prescriptions for Controlled Substances (**EPCS**), the following applies:

(1) Tokens

a. Each Electronic Prescription account is assigned to a specific provider (**Prescribing Provider**) authorized by Customer.

b. Each Prescribing Provider will be provided with a complimentary Identity-Proof Hard Token (**Hard Token**) and confirmation letter.

c. If the Hard Token is lost, damaged, or becomes inoperable, there will be an additional fee for a new Hard Token or confirmation letter.

d. If Prescribing Provider secures and elects to use a Soft Token (**Soft Token**) provided by a third-party, the Soft Token *must be downloaded and stored on a separate device* from the computer or device on which the Prescribing Provider gains access to the EPCS feature and transmits prescriptions.

The Hard Tokens and Soft Tokens are referred to generally as Tokens.

(2) Customer Responsibilities

Customer and each Prescribing Provider agrees:

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

a.  that each Prescribing Provider retains sole possession of the Hard Token and not to share the login passphrase with any other person;

b.  that each Prescribing Provider may not allow any other person to use the Token or enter the login passphrase in order to sign controlled substance prescriptions;

c.  that failure to secure the Token, login passphrase, or any biometric information may provide a basis for revocation or suspension of the EPCS account;

d.  to notify Tebra within one (1) business day of discovery if:

   i.  Customer or a Prescribing Provider is contacted by a pharmacy because one or more controlled substance prescriptions are displaying the incorrect United States Drug Enforcement Administration (**DEA**) number;

   ii. if Customer or a Prescribing Provider discovers that one or more controlled substance prescriptions issued using a Prescribing Provider DEA number were not consistent with the prescriptions actually signed, or were not signed at all; or

   iii. if a Prescribing Provider's Token has been lost or stolen, or the authentication protocol has been compromised in any way;

e.  that the Prescribing Provider is responsible for any controlled substance prescriptions written using its two-factor authentication credential;

f.  that Prescribing Providers have the same responsibilities when issuing electronic prescriptions for controlled substances as when issuing paper or oral prescriptions;

g.  to prescribe controlled substances only for legitimate medical purposes;

h.  to review security logs on a daily basis for any security incidents, and to report to the DEA any security incident and provide Tebra with a copy of such report; and

i.  to keep all security incident reports on file for a period of two (2) years.

(3) EPCS and Prescription Drug Monitoring Program (PDMP)

Access and use of EPCS with PDMP add-on service by Customer is subject to and governed by the third party terms here: https://drfirst.com/epcs-pdmp-terms-of-use/.

(4) Electronic Prescriptions Excluding Prescriptions for Controlled Substances (Non-EPCS Electronic Prescriptions)

If Customer uses the Service for Non-EPCS Electronic Prescriptions, the Customer and each Prescribing Provider agrees:

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

      a.  to only prescribe on their own behalf and not give away password or
          credentials to another person to prescribe for them; and

      b.  to take the same responsibility as Customer would take when transmuting
          paper or phone prescriptions.

(5) Meaningful Use

Customer and providers intending to attest for Meaningful Use agree to follow
the processes and procedures recommended in Tebra's Meaningful Use training
such that Tebra's tracking and reports function appropriately.

(6) Tebra Billing for Mac

Access and use of Tebra Billing by Customer by means of a Mac device is subject
to and governed by the third party terms
here: https://www.parallels.com/about/legal/eula/.

## e)  'Provider Website' 'Practice Growth and 'Engagement Software' Offerings – Additional Terms.

In connection with its Practice Growth and other patient engagement offerings, Tebra may
design and develop a cloud-based provider website (Provider Website), and provide cloud-
based tools and services (for example, online booking tool, call tracking, reputation
management, profile syndication and management, analytics dashboard, and general online
local marketing services) (collectively, the Practice Growth and Engagement Software).

The Service includes any required, usual, appropriate, or acceptable methods to perform
activities related to the Service, for example:
- conducting analytics and other product improvement activities;
- carrying out the Service or the business of which the Service is a part;
- carrying out any benefits, rights, and obligations related to the Service;
- maintaining records relating to the Service; and
- complying with any legal or self-regulatory obligations related to the Service.

### i)  Provider Website

1.  Provider Website will integrate elements of the Practice Growth Software,
    including but not limited to the Tebra online booking tool.
2.  Customer may, but is not required to, submit Content for inclusion on such
    Provider Website.

### ii)  Content Rights

1.  Customer may upload or submit content, files, and information to the Service for a
    Provider Website or other use with the Practice Growth and Engagement Software

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

(**Content**). Customer retains copyright and any other proprietary rights that Customer may hold in the Content that Customer provides to Tebra; for clarity, all other elements of the Provider Website, Practice Growth and Engagement Software and Content provided by Tebra, apart from any Content provided by Customer, are owned solely by Tebra, and will not be retained by Customer upon suspension, expiration or termination of this agreement.

2. Customer is solely responsible for any Content that Customer provides or any custom tracking technology used on a Provider Website, and for the consequences of posting or publishing such Content or tracking technology.

3. Customer hereby grants Tebra a non-exclusive irrevocable, perpetual, royalty-free license to display, store, distribute, share, modify, and otherwise use such Content for purposes providing the Service under this agreement (including, without limitation, a license to syndicate the Content to third party publisher sites as required to provide Customer the applicable Service (e.g., Tebra Engage)).

iii) Content Warranties

Customer represents and warrants to Tebra that:

1. Any Content submitted to the Service does not violate any copyright, trade secret, privacy or other third party right;

2. It will not submit any Content that is untrue, defamatory, harmful to any person, or violates HIPAA Privacy Rules, state or federal laws on patient privacy; and

3. All patient testimonials submitted by Customer are accurate, have the patient's consent, and comply with ethical guidelines of professional medical associations as well as state and local medical and private practice boards and governing bodies.

iv) Practice Growth and Engagement Software

1. Where applicable, Tebra will make the dashboard element of the Practice Growth Platform (Dashboard) available to Customer in accordance with these Terms of Service and any other Tebra rules and policies then in effect.

2. The Dashboard allows Customer to set up an account and password to access the Dashboard and set up users (Users).

v) Domain Name Upon Termination

Customer will have the following rights to the Provider Website domain name upon termination or expiration of the Customer Agreement:

1. If the domain name was purchased and registered by Tebra, then Tebra will take reasonable measures to assign its rights in the domain name to Customer; or

2. If rights to the domain name were provided by Customer, then Customer will retain such rights to the domain name.

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

vi) Reviews & Opinions
1. Tebra does not endorse, validate as accurate, or necessarily agree with any of the reviews, links, and user-generated content from users or Customers on the Service.
2. Tebra reserves the right to refuse to publish any patient review provided by Customer.
3. The Service may attempt to send automated or human-based alerts when reviews are provided on third party websites, but Tebra does not guarantee the accuracy, completeness, or timeliness of such alerts.

vii) Advertisements
1. Tebra reserves the right to place advertisements or messages from third parties on free claimed listings web pages as well as free versions of the Service.
2. Such advertisements or messages from third parties may be visible to users as well as Customer.

f) 'Tebra Telehealth' Service Offering – Additional Terms.

i) Telehealth Medical Services
1. Tebra Telehealth is designed to facilitate Customer's delivery of Telehealth Medical Services.
2. Telehealth Medical Services means the delivery of medical care by Customer to a patient physically located at another site through the use of advanced telecommunications technology that allows providers to remotely see and hear the patient in real time.

ii) Customer's Responsibilities
Customer is solely responsible for:
1. the provision of Telehealth Medical Services and all other professional medical services and aspects relating to Customer's practice of medicine (for the avoidance of doubt, Telehealth Medical Services are performed by Customer for appropriate visits as determined in Customer's, or its provider's, as applicable, sole professional judgment);
2. documenting the Telehealth Medical Services in Customer's clinical records;
3. billing and collecting for Telehealth Medical Services;
4. providing notice to and/or obtaining consent from any third parties relating to the provision of Telehealth Medical Services through Tebra Telehealth;
5. ensuring Tebra Telehealth is used in accordance with applicable instructions, training materials and other online material that may be made available by Tebra from time to time;

7

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

6.  obtaining and maintaining both the functionality and security of all information technology software solutions and related services necessary to connect to, access or otherwise use Tebra Telehealth; and

7.  complying with applicable laws and standards imposed by government health care programs and other payors, licensing agencies and applicable accreditation bodies, including, without limitation, with respect to the provision of Telehealth Medical Services.

g) 'Tebra Payment Processing Service' Offering – Additional Terms

If Customer contracts for Payment Processing Services, the Payment Processing Services will be governed by Tebra Payment Processing Terms. If there is a conflict between the Payment Processing Terms and any other terms in the Customer Agreement, the Payment Processing Terms will control for purposes of the Payment Processing Services.

# 3) PAYMENT TERMS

a) Payment

   i.  Customer must pay all fees as specified on the order and related services as incurred as specified on the **Pricing Policy** page.
   ii.  Unless otherwise stated, invoiced charges are due upon receipt.
   iii.  Customer is responsible for providing complete and accurate billing and contact information to Tebra and notifying Tebra of any changes to such information.

b) Credit Card and ACH

   i.  Customer must pay all fees (in US dollars) with a credit card or via ACH upon receipt of an invoice from Tebra.
   ii.  If the credit card or ACH is not valid or the payment is not otherwise made, Customer must pay the amount owed upon receipt of an invoice.
   iii.  Customer hereby authorizes Tebra to charge such credit card or withdraw from Customer's bank account via ACH for all purchased Services and related services, and any renewals.
   iv.  **Individual large credit card payments are subject to a processing fee as detailed in the Pricing Policy.**

c) Taxes

   i.  Except for certain state sales taxes as noted on Customer invoices, Tebra's fees do not include any taxes, levies, or other similar governmental assessments (**Taxes**).
   ii.  Except as otherwise stated herein, Customer is responsible for the payment of all Taxes associated with its purchases under the Customer Agreement.

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

    iii.  Tebra is solely responsible for taxes assessable against Tebra based on its income, property, and employees.

## d) Suspension of Service for Non- Payment

    i.  Tebra may suspend or terminate Customer's access to the Service, or both, if Customer has not paid amounts owed to Tebra when due.

    ii.  In advance of any suspension or termination, Tebra will make commercially reasonable efforts to send a minimum of five (5) days' advance electronic notice of payment default to the email address in Customer's account within the Service.

    iii.  **Tebra reserves the right to assess a reactivation fee, as detailed in the Tebra Pricing Policy to Customers whose accounts are suspended based on late payments received more than fifteen (15) days following the payment due date.**

## e) Fee Changes

    i.  For Customers with month-to-month agreements, all fees may be changed with sixty (60) days' notice to Customer.

    ii.  For all Customers, Tebra reserves the right to increase its prices by no greater than 4.9% at any one time, no more frequently than once per twelve- (12-) month period, upon thirty (30) days' notice to the Customer.

    iii.  For all Customers, Tebra may increase fees to cover the cost of postage rate increases as well as regulatory, compliance, and other cost increases imposed by changes to applicable federal and state rules. Tebra will automatically apply the rate increase to all services impacted by the change with thirty (30) days' notice to the Customer.

## f) Timing of Payment

Fees, as identified on the order form or subscription agreement, are due as indicated. Tebra will have the right to charge the Customer's card or debit from Customer's account through ACH for fees in accordance with the agreement. By providing Tebra with payment information, Customer agrees that Tebra is authorized, to the extent permitted by applicable law, to immediately charge such payment method for all fees and charges due and payable to Tebra hereunder and that, except as required by applicable law, no additional notice or consent is required. Customer agrees to immediately notify Tebra of any change in the payment information used for payment hereunder. Customer understands and acknowledges that all amounts owed must be paid in advance and that if timely payment is not received, in addition to being in breach of Customer's contractual obligations, the Service may be paused or terminated. Any amounts not paid by the Customer when due may bear interest at the rate of 1.5% per month (or the highest rate permitted by law). Customer agrees to pay all costs of collection, including attorney's fees and costs and all other legal and collection

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

expenses incurred by Tebra in connection with its enforcement of its rights under the agreement.

## 4) REPRESENTATIONS AND WARRANTIES; DISCLAIMERS

### a) Availability

Tebra will make commercially reasonable efforts to maintain uptime of 99% excluding any scheduled downtime, force majeure issues and third party services (see <u>Support Policy</u> for additional details).

### b) Mutual Representations and Warranties

**Each party represents and warrants to the other that:**

    i.   the Customer Agreement has been duly entered into and constitutes a valid and binding agreement enforceable against such party in accordance with its terms;

    ii.  no authorization or approval from any third party is required in connection with such party's entering into or performance of the Customer Agreement; and

    iii. the entering into and performance of the Customer Agreement does not and will not violate the laws of any jurisdiction or the terms or conditions of any other agreement to which it is a party or by which it is otherwise bound.

### c) DISCLAIMERS

- **TEBRA DISCLAIMS ALL WARRANTIES, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY THAT THE SERVICE WILL BE UNINTERRUPTED, ERROR-FREE, OR WITHOUT DELAY, AND THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE AND NON-INFRINGEMENT.**
- **WHILE TEBRA TAKES REASONABLE PHYSICAL, TECHNICAL, AND ADMINISTRATIVE MEASURES TO SECURE THE SERVICE, TEBRA DOES NOT GUARANTEE THAT THE SERVICE CANNOT BE COMPROMISED. TEBRA DISCLAIMS ANY WARRANTY REGARDING ANY PERCENTAGE OF COLLECTION OF CLAIMS FOR CUSTOMER.**
- FROM TIME TO TIME, CUSTOMER MAY REQUEST THE ADDITION OF CERTAIN CODE AND/OR FUNCTIONALITIES TO BE ADDED TO CUSTOMER'S WEBSITE OR OTHER PLATFORM. TEBRA SHALL NOT BE RESPONSIBLE FOR ENSURING THAT THE REQUESTED CODE AND/OR FUNCTIONALITIES COMPLY(IES) WITH ANY AND ALL APPLICABLE LAWS AND REGULATIONS PERTAINING TO CUSTOMER'S BUSINESS. CUSTOMER HEREBY ACKNOWLEDGES AND AGREES THAT CUSTOMER ALONE SHALL BE RESPONSIBLE FOR ENSURING THAT CUSTOMER'S WEBSITE AND SERVICE OFFERINGS, EVEN IF SUPPORTED BY TEBRA, COMPLY WITH APPLICABLE LAWS AND REGULATIONS.

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

## 5) COMPLIANCE

### a) No Medical Advice Provided by Tebra

   i. Tebra does not provide medical advice, provide medical or diagnostic services, or prescribe medication.

   ii. Use of the Service is not a substitute for the professional judgment of health care providers in diagnosing and treating patients.

   iii. Customer agrees that it is solely responsible for verifying the accuracy of patient information (*including, without limitation, obtaining all applicable patients' medical and medication history and allergies), obtaining patient's consent to use the Service (including, without limitation, the Patient Portal*), and for all of its decisions or actions with respect to the medical care, treatment, and well-being of its patients, including without limitation, all of Customer's acts or omissions.

   iv. Any use or reliance by Customer upon the Service will not diminish that responsibility.

   v. Customer assumes all risks associated with Customer's clinical use of the Service for the treatment of patients.

   vi. NEITHER TEBRA NOR ITS LICENSORS ASSUME ANY LIABILITY OR RESPONSIBILITY FOR DAMAGE OR INJURY (INCLUDING DEATH) TO CUSTOMER, A PATIENT, OTHER PERSONS, OR TANGIBLE PROPERTY ARISING FROM ANY USE OF THE SERVICE.

### b) Customer's Compliance with Medical Retention Laws and Patient Records Access

   i. Customer is responsible for understanding and complying with all state and federal laws related to retention of medical records, patient access to information, and patient authorization to release data.

   ii. Customer must obtain any necessary patient consent prior to using the Service (*including, without limitation, the Patient Portal*) and will apply settings to exclude information from availability in the Patient Portal as necessary to comply with state or federal law.

### c) HIPAA

   i. As part of the Service, Tebra may perform or assist in performing a function or activity on Customer's behalf that involves the use and disclosure of Protected Health Information (as defined in 45 C.F.R. 164.501; **PHI**).

   ii. The parties may use or disclose such PHI as required by the Health Insurance Portability and Accountability Act of 1996 (**HIPAA**), the Standards for Privacy of Individually Identifiable Health Information (**Privacy Rule**) and the Standards for Security of Electronic Protected Health Information (**Security Rule**) promulgated thereunder, and the Health Information

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

Technology for Economic and Clinical Health Act (Division A, Title XIII and Division B, Title IV, of the American Recovery and Reinvestment Act of 2009, Pub. L. 111-5) (**HITECH Act**).

iii. Capitalized terms used but not otherwise defined have the same meaning given to such terms in HIPAA, the HITECH Act, or any implementing regulations promulgated thereunder, including but not limited to the Privacy Rule and the Security Rule.

iv. In connection with and by agreeing to the Customer Agreement, you and Tebra agree to be bound by the terms of a <u>Business Associate Agreement</u> which is incorporated herein by reference. You (the "**Covered Entity,**" as referred to in the Business Associate Agreement) hereby agree that you have read and agree to be bound by the terms of the Business Associate Agreement.

## d) CCPA

i. **Definitions.**

1. **CCPA** means the California Consumer Privacy Act of 2018, as amended (Cal. Civ. Code §§ 1798.100 to 1798.199.95), the CCPA Regulations (Cal. Code Regs. tit. 11, §§ 7000 to 7102), and any related regulations or guidance provided by the California Attorney General. For the purposes of this Section, terms defined in the CCPA, including personal information and business purposes, carry the same meaning.

2. For purposes of this Section, "**Customer Personal Information**" means any "personal information" contained within the data that Tebra "processes" (as defined in the CCPA) in connection with performing the Service.

ii. This Section applies solely to the extent that:

- Tebra's provision of the Service is not exempt from the CCPA  under California Civil Code sections 1798.145(c)(1)(A) and (c)(1)(B) pertaining to medical information, PHI, providers of health care, and covered entities;
- Customer is a "business" within the meaning of the CCPA; and
- Tebra is processing the personal information of California residents.

iii. Tebra is a service provider. Tebra will not collect, retain, use, disclose or otherwise process Customer Personal Information for any purpose other than for performing the Service, or as otherwise permitted by the CCPA.

iv. Tebra will limit Customer Personal Information collection, use, retention, and disclosure to activities reasonably necessary and proportionate to provide the Service or to achieve another compatible operational purpose.

v. Tebra will not collect, use, retain, disclose, sell, or otherwise make Customer Personal Information available for Tebra's own commercial purposes or in a way that does not comply with the CCPA. Tebra may, however, create and derive from its provision of the Service anonymized and/or aggregated data that does not identify Customer or any consumer or household, and use, publicize, or share with third parties such data to improve Tebra's products and services and for Tebra's other lawful business purposes.

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

vi.   Notwithstanding the foregoing, with Customer's consent, Tebra may share Customer contact information with certain partners we may work with.

vii.  Tebra must promptly comply with any Customer request or instruction requiring Tebra to provide, amend, transfer, or delete Customer Personal Information, or to stop, mitigate, or remedy any unauthorized processing unless otherwise permitted by the CCPA.

viii. Notwithstanding anything in the agreement entered, Customer and Tebra acknowledge and agree that Tebra's access to Customer Personal Information is not part of the consideration exchanged by the parties in respect of the Agreement.

ix.   Tebra certifies that it understands its obligations under this Section and must comply with them.

x.    If a law requires Tebra to disclose Customer Personal Information for a purpose unrelated to the Service, Tebra must first inform Customer of the legal requirement and give Customer an opportunity to object or challenge the requirement, unless the law prohibits such notice.

xi.   Tebra may use a subcontractor to provide or support the provision of the Service. Any subcontractor used must qualify as a service provider under the CCPA and Tebra will not make any disclosures to the subcontractor that the CCPA would treat as a sale.

xii.  Customer is solely responsible for:
   - identifying whether the CCPA applies to Customer;
   - providing any notices of your privacy practices that may be required by CCPA; and
   - identifying and responding to verifiable consumer requests to exercise CCPA rights to access, delete, or opt out of the sale of personal information (**CCPA Requests**), including for verifying the identity of consumers submitting CCPA Requests and for evaluating the scope and legality of CCPA Requests.

xiii. Tebra will provide reasonable assistance to Customer in responding to such CCPA Requests, which may include assistance by way of providing self-service functionality. Tebra will treat any CCPA Requests that Customer submits to Tebra as presumptively valid under the CCPA. With respect to CCPA Requests for which Customer requires Tebra to provide assistance, Customer must:
   - notify Tebra within five (5) days of its receipt of the CCPA Request by emailing privacy@tebra.com; and
   - provide Tebra with the consumer's email address or such other information that would permit Tebra to honor the request.

   Customer is solely responsible and liable for responding to the individual's CCPA Request, including without limitation the content and timing of the response, in compliance with the CCPA.

xiv.  In response to a verifiable CCPA Request for access to Customer Personal Information that Customer submits to Tebra, within ten (10) business days of Tebra's receipt of such

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

request from Customer, Tebra will provide Customer with a file that contains the Customer Personal Information that Tebra maintains about the individual via a secure method of transfer. Tebra may withhold from such file any Customer Personal Information that the CCPA does not require to be provided in response to a CCPA Request.

xv. In response to a verifiable CCPA Request for the deletion of Customer Personal Information that Customer submits to Tebra, except as otherwise required by applicable law or permitted by the CCPA, within ten (10) business days of Tebra's receipt of such request from Customer, Tebra will delete the Customer Personal Information, to the extent Tebra maintains such Customer Personal Information about the individual.

xvi. Tebra may delete such Customer Personal Information by anonymizing and/or aggregating the information such that the information does not identify, and is not reasonably capable of identifying, the individual.

xvii. Customer may not direct or otherwise cause Tebra to share any Customer Personal Information with any third party in a manner that may constitute a "sale" as such term is defined in the CCPA.

### e) TCPA

i. This Section concerns compliance with the Telephone Consumer Protection Act of 1991, located at 47 U.S.C. §§ 227 et seq., including the implementing regulations therefor located at 47 C.F.R. 64.1200 et seq. (**TCPA**) and the Telemarketing Sales Rule authorized by the Telemarketing and Consumer Fraud and Abuse Prevention Act, located at 15 U.S.C. §§ 6101-6108 (**TSR**) and the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003, located at 15 U.S.C §§ 7701-7713 (**CAN SPAM Act**).

ii. As between Customer and Tebra, Customer must comply and be solely responsible for complying with all laws governing any messages sent or received in connection with its access or use the Service, *including without limitation, the TCPA, TSR, and CAN SPAM Act.*

iii. Customer is responsible for, without limitation, obtaining any legally required consents from all third parties (including its patients or customers) to send and receive any text message and/or emails using the Service and honoring any requests revoking such consent or otherwise "opting-out" of receiving any such messages and/or emails.

iv. Customer is solely liable for, and must indemnify, defend and hold harmless Tebra from and against any and all damages, liabilities, judgments, fees, fines, costs and expenses (including reasonable attorneys' fees) incurred by Tebra arising from any claims, demands or legal actions made against Tebra resulting from Customer's failure to comply with this Section.

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

f) Anti-Discrimination Policy
   i. At Tebra, we strive to create an environment where people are equally valued and where we and our Customers work together to do our part to help end discrimination.
   ii. As a result, Tebra has adopted an anti-discrimination policy that includes our Customers.
   iii. Tebra will not tolerate Customers who engage in extreme examples of blatant discrimination or verbal aggression in their interactions with Tebra employees or publicly on social channels.
   iv. This includes discrimination against or verbal aggression towards any race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status of any person.
   v. Customer agrees and understands that violation of this policy by Customer qualifies as a Material Breach of the Customer Agreement pursuant to **Section 8 (TERM, TERMINATION, AND RETURN OF DATA)**.

g) Definition of Confidential Information
   i. Confidential Information means all non-public information disclosed by a party **(Discloser)** to the other party **(Recipient)**, whether orally, visually or in writing, that is designated as confidential or that reasonably should be understood to be confidential given the nature of the information and the circumstances of disclosure **(Confidential Information)**.
   ii. Tebra's Confidential Information includes, without limitation, the non-public portions of the Service and Customer's Confidential Information includes, without limitation, Customer Information.

h) Protection of Confidential Information
   i. Recipient must use the same degree of care that it uses to protect the confidentiality of its own confidential information (but in no event less than reasonable care) not to disclose or use any Confidential Information of the Discloser for any purpose outside the scope of the Customer Agreement.
   ii. Recipient must make commercially reasonable efforts to limit access to Confidential Information of Discloser to those of its employees, contractors, and clients (as the case may be) who need such access for purposes consistent with the Customer Agreement and who have signed confidentiality agreements with Recipient no less restrictive than the confidentiality terms of the Customer Agreement.
   iii. Recipient may disclose Confidential Information (1) to the extent required by law or legal process; (2) to its legal or financial advisors, provided that such advisors are bound by a duty of confidentiality that includes use and disclosure restrictions; and (3) as required under applicable securities regulations.

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

iv.  Each party may disclose the terms and conditions of the Customer Agreement on a confidential basis to current and prospective investors, acquirers, lenders, and their respective legal and financial advisors in connection with due diligence activities.

## i) Exclusions

Confidential Information excludes information that (1) is or becomes generally known to the public without breach of any obligation owed to Discloser; (2) was known to the Recipient prior to its disclosure by the Discloser without breach of any obligation owed to the Discloser; (3) is received from a third party without breach of any obligation owed to Discloser; or (4) was independently developed by the Recipient without use or access to the Confidential Information.

# 6) PROPRIETARY RIGHTS

## a) Reservation of Rights by Tebra

i.  The software, workflow processes, user interface, designs, know-how, and other technologies provided by Tebra as part of the Service, and all updates and enhancements, are the proprietary property of Tebra and its licensors, and all right, title, and interest in and to such items, including all associated intellectual property rights, remain only with Tebra.

ii.  Tebra reserves all rights unless expressly granted in the Customer Agreement.

## b) AMA Content

Any content of the American Medical Association (AMA) is subject to the terms in the AMA End User License Agreement.

## c) Aggregation Services and De-identified Data

i.  Tebra may use PHI to provide Customer with data aggregation services (as that term is defined by HIPAA) and to create de-identified data in accordance with 45 CFR 164.514(a)-(c).

ii.  Tebra solely owns all right, title, and interest, in any de-identified data it creates from PHI.

iii.  Tebra and its affiliates may use and disclose, during and after the Customer Agreement, all aggregate, anonymized information and de-identified data for purposes of enhancing the Service, technical support and other business purposes, all in compliance with the HIPAA Privacy Standards, including without limitation the limited data set and de-identification of information regulations.

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

## 7) LIMITS ON LIABILITY

### a) NO INDIRECT DAMAGE

TEBRA WILL NOT BE LIABLE TO CUSTOMER FOR ANY LOST PROFITS, COST OF COVER, LOSS OF DATA, INTERRUPTION OF BUSINESS OR ANY INCIDENTAL, SPECIAL, INDIRECT, OR CONSEQUENTIAL DAMAGES, EVEN IF CUSTOMER IS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, WHETHER UNDER THEORY OF CONTRACT, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY, OR OTHERWISE.

### b) LIMIT

i. TEBRA'S TOTAL LIABILITY FOR ALL DAMAGES ARISING UNDER OR RELATED TO THE CUSTOMER AGREEMENT (IN CONTRACT, TORT, OR OTHERWISE) WILL NOT EXCEED THE ACTUAL AMOUNT PAID BY CUSTOMER WITHIN THE SIX (6) MONTHS IMMEDIATELY PRECEDING THE EVENT WHICH GAVE RISE TO THE CLAIM.

ii. THIS LIMITATION OF LIABILITY IS INTENDED TO APPLY WITHOUT REGARD TO WHETHER OTHER PROVISIONS OF THIS AGREEMENT HAVE BEEN BREACHED OR HAVE PROVEN INEFFECTIVE OR IF A REMEDY FAILS OF ITS ESSENTIAL PURPOSE.

iii. ANY CLAIM BY CUSTOMER AGAINST TEBRA MUST BE BROUGHT WITHIN SIX (6) MONTHS OF THE EVENT WHICH GAVE RISE TO THE CLAIM, AND IF IT IS NOT BROUGHT WITHIN SUCH TIME PERIOD THEN SUCH CLAIM IS EXPRESSLY WAIVED BY CUSTOMER.

## 8) TERM, TERMINATION, AND RETURN OF DATA

### a) Term

i. The applicable Services will continue for the duration specified in the applicable Customer Agreement (**Initial Term**). Following the end date of the Initial Term, the Customer Agreement will be automatically extended for additional consecutive terms of equal duration to the Initial Term (**Renewal Term**) unless either party provides notice of non-renewal in accordance with the Section entitled "Notice of Non-Renewal" below. The Initial Term and any subsequent Renewal Term(s) may be collectively referred to as the "Term".

ii. These Terms of Service continue in effect until all order forms and/or subscription agreements and all Services are terminated.

### b) Notice of Non-Renewal

To prevent renewal of a Customer Agreement, either party must give written notice of non-renewal and this written notice must be received no more than ninety (90) days but no less than sixty (60) days in advance of the end of the Customer Agreement then in effect. If Customer decides not to renew, Customer must send the notice of non-renewal by contacting

17

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

the assigned Account Manager directly or via the communications methods in Tebra's Support Policy. Any notice received with less than sixty (60) days' notice will result in auto-renewal of the Customer Agreement for an additional Renewal Term.

c) Downgrades

Customers with Billing, Clinical, Engage, and/or Telehealth modules must provide notice in writing at least thirty (30) days prior to removing a license or canceling a module. Notice should be made to the assigned Account Manager directly or via the communications methods in Tebra's Support Policy.

d) Termination for Material Breach

   i. Either party may terminate the Customer Agreement if the other party material breaches any term of the Customer Agreement and does not cure the breach within thirty (30) days of receipt of written or electronic notice of breach.

   ii. Additional terms are in the Term, Termination and Return of Data Policy FAQ page.

e) No Early Termination; No Refunds

Absent termination pursuant to the Sections entitled "Notice of Non-Renewal" and "Termination for Material Breach", Customer cannot cancel the Customer Agreement during the Term in effect. Tebra does not provide refunds if Customer decides to stop using the Service before the end of the Term.

f) Return of Data

   i. As Customer has access to the Customer Information during the term of an order, Tebra has no obligation to provide Customer Information to Customer upon termination of the Customer Agreement.

   ii. Notwithstanding the foregoing, Tebra retains Customer Information for sixty (60) days from such termination and Tebra may provide Customer access to such information upon Customer's request.

   iii. Additional information is located at Term, Termination and Return of Data Policy FAQ page.

   iv. If Customer's account is suspended for any reason, Tebra will provide *offline access* to Customer Information via the communications methods detailed in the Support Policy.

g) Customer Actions upon Termination

   i. Upon termination, Customer must pay any unpaid fees and destroy all Tebra property in Customer's possession.

   ii. Customer, upon Tebra's request, will confirm in writing or electronically that it has complied with this requirement.

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

h) Suspension or Termination of Service for Violation of Law or the Agreement

    i.   Tebra may immediately suspend or terminate the Service and remove applicable Customer Information if it in good faith believes that, as part of using the Service, Customer may have violated any applicable law or any term of the Customer Agreement.

    ii.  Tebra may use reasonable efforts to try to contact Customer in advance, but it is not required to do so.

## 9) INDEMNITY

a) Customer Indemnity

To the maximum extent allowed by law, Customer must indemnify, defend (at Tebra's option), and hold harmless Tebra, including its officers, directors, employees, agents, successors, and assigns  against all third-party claims (including, without limitation, by governmental agencies), demands, damages, costs, penalties, fines, and expenses (including reasonable attorneys' fees and costs) arising out of or related to:

    i.   the use of the Service by Customer;

    ii.  Customer's breach of any term in the Customer Agreement;

    iii. Customer Information;

    iv. any unauthorized use, access, or distribution of the Service by Customer; or

    v.  violation of any individual's privacy rights related to information submitted under Customer's account, or fraudulent, invalid, duplicate, incomplete, unauthorized, or misleading information submitted under Customer's account or by Customer.

b) Tebra Indemnity

Tebra shall indemnify, defend, and hold harmless Customer from and against any and all losses incurred by Customer resulting from any action by a third party (other than an a person or entity that directly or indirectly controls, is controlled by, or is under common control with Customer) against Customer alleging use of the Service in accordance with this Customer Agreement infringes or misappropriates such third party's US Intellectual Property Rights.

The foregoing obligation does not apply to the extent that the alleged infringement arises from:

    i.   Customer Information or Customer provided Content;

    ii.  access to or use of the Service in combination with any hardware, system, software, network, or other materials or service not provided by Tebra or specified for Customer's use, unless otherwise expressly permitted by Tebra in writing;

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

   iii.  modification of the Service other than:

     1.  by or on behalf of Tebra; or

     2.  with Tebra's written approval in accordance with Tebra's written specification;

   iv.  failure to timely implement any modifications, upgrades, replacements, or enhancements made available to Customer by or on behalf of Tebra.

# 10)  DISPUTE RESOLUTION

## a) Governing Law

   i.  The Customer Agreement and any Dispute (as defined below) will be governed exclusively by the laws of the State of California, without regard to its conflicts of laws principles. The Federal District Court for the Central District of California or Orange County Superior court will be the exclusive venue for any resolution of any Dispute. The parties hereby submit to and consent irrevocably to the jurisdiction of such courts for these purposes.

   ii.  ***The parties hereby irrevocably waive any and all right to trial by jury in any legal proceeding arising out of any Dispute.***

## b) General Mediation Process

   i.  The parties shall submit any and all disputes, claims, or controversies arising out of or relating to the Customer Agreement including any conduct related to or arising out of the Customer Agreement following termination hereof (each a **"Dispute"**) as follows:

     1.  the parties will submit the dispute to non-binding mediation in Orange County under the mediation rules of the American Arbitration Association (**AAA**); and

     2.  if no settlement is reached within sixty (60) days of the start of mediation, either party may seek legal redress in a forum of competent jurisdiction.

   ii.  Either party may commence mediation by providing to AAA and the other party a written request for mediation, which must set forth the subject of the Dispute, the relief requested, and the factual and legal bases for such relief. The parties shall cooperate with AAA and with one another in selecting a mediator from the AAA panel of neutrals and in scheduling the mediation proceedings. The parties shall participate in the mediation in good faith and equally share the costs of the mediation.

   iii.  If the Dispute is not resolved through mediation, the party seeking relief may pursue all remedies available at law, subject to the terms of this Agreement.

   iv.  Notwithstanding this Section, either party may (1) terminate this Agreement according to its terms, or (2) seek injunctive or equitable relief.

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

c) PROHIBITION OF CLASS AND REPRESENTATIVE ACTIONS

   i. EACH PARTY MAY BRING CLAIMS AGAINST THE OTHER ONLY ON AN INDIVIDUAL PARTY BASIS, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE ACTION OR PROCEEDING.

   ii. THE MEDIATOR MAY NOT CONSOLIDATE OR JOIN MORE THAN ONE PARTY'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A CONSOLIDATED, CLASS OR REPRESENTATIVE PROCEEDING.

## 11) OTHER TERMS

### a) Consent to Electronic Notice, Communications and Transactions

   i. By using the Service, Customer agrees to conduct business electronically and acknowledges that Customer has read the Consumer Disclosure Regarding Electronic Business Transactions, Receiving Electronic Notices and Disclosures, and Signing Documents Electronically, located at https://www.tebra.com/consumer-disclosure/.

   ii. For purposes of messages and notices about the Service (including, without limitation, collections and payments issues), Tebra may send email notices to the email address associated with Customer's account or provide in service notifications.

   iii. For certain notices (e.g., notices regarding termination or material breaches), Tebra may send notices to the postal address provided by Customer.

   iv. Customer is solely responsible for keeping an updated email address within its account for notice purposes.

   v. TEBRA HAS NO LIABILITY ASSOCIATED WITH CUSTOMER'S FAILURE TO MAINTAIN ACCURATE CONTACT INFORMATION WITHIN THE SERVICE OR ITS FAILURE TO REVIEW ANY EMAILS OR IN-SERVICE NOTICES.

   vi. Customer has the ability to enter into agreements, authorizations, consents, and applications; make referrals; order lab tests; prescribe medications; or engage in other transactions electronically.

   vii. ELECTRONIC SUBMISSIONS THROUGH THE SERVICE IN CONNECTION WITH SUCH ACTIVITIES CONSTITUTE CUSTOMER'S CONSENT TO BE BOUND BY SUCH AGREEMENTS AND TRANSACTIONS AND APPLIES TO ALL RECORDS RELATING TO SUCH TRANSACTIONS.

   viii. Customer represents and warrants that it has the authority to take such actions.

   ix. Customer agrees that by registering for the Service (including without limitation, any request forms or use of communications features), constitutes a request for Tebra to send email, fax, phone call, or SMS communications related to the Service, (including, but not limited to, upcoming appointments, special offers, billing, and upcoming events).

   x. Tebra is not responsible for any text messaging or data transmission fees.

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

xi. If Customer provides a cellular phone number and agrees to receive communications from Tebra, Customer specifically authorizes Tebra to send text messages or calls to such number.

xii. Customer represents and warrants it has the authority to grant such authorization.

xiii. Customer is not required to consent to receive text messages or calls as a condition of using the Service and may opt out of such messages through the Services.

## b) Entire Agreement

i. The Customer Agreement constitutes the entire agreement between the parties and supersedes all prior or contemporaneous negotiations or agreements, whether oral or written, related to this subject matter.

ii. Customer is not relying on any representation concerning this subject matter, oral or written, not included in the Customer Agreement.

iii. No representation, promise, or inducement not included in the Customer Agreement is binding.

iv. No modification or waiver of any term of the Customer Agreement is effective unless signed by both parties.

v. Notwithstanding the foregoing, Tebra may modify or replace the Customer Agreement as detailed in the paragraph entitled "Changes", below.

vi. The Convention on Contracts for the International Sale of Goods does not apply.

vii. If there is a conflict between the Terms of Service and the order form or subscription agreement, the order form or subscription agreement prevails.

## c) Changes

Notwithstanding anything to the contrary herein, these Terms of Service are subject to change by Tebra on a going-forward basis in its sole discretion at any time. When changes are made to these Terms of Service, Tebra will make a new copy of the modified Terms available on the Services and will also update the "Last Updated" date at the bottom of the Terms of Service. Any changes to the Terms of Service will be effective immediately for new Customers and will be effective for continuing Customers upon the earlier of: (i) thirty (30) days after posting notice of such changes on the Services for existing Customers; (ii) thirty (30) days after dispatch of an e-mail notice of such changes to you; or (iii) you providing consent to the updated Terms in a specified manner, as applicable. Unless otherwise stated, your continued use of the Services constitutes your acceptance of such change(s). If you do not agree to any change(s) after receiving a notice of such change(s), then, notwithstanding anything to the contrary herein, your sole recourse is to terminate the Agreement, effective as of the end of the then current Initial Term or Renewal Term, by providing Tebra written notice of termination prior to your continued use of the Services. Please regularly check the Services to view the then-current Terms.

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

## d) Feedback

If Customer provides feedback or suggestions about the Service, then Tebra (and those it allows to use its technology) may use such information without obligation to Customer.

## e) Beta Features

i. If Customer is invited to access any beta features of the Service or a Customer accesses any beta features of the Service, Customer agrees that:

- such features have not been made commercially available by Tebra;
- such features may not operate properly, be in final form, or be fully functional;
- such features may contain errors, design flaws, or other problems;
- it may not be possible to make such features fully functional; use of such features may result in unexpected results, corruption or loss of data, or other unpredictable damage or loss;
- such features may change and may not become generally available; and
- Tebra is not obligated in any way to continue to provide or maintain such features for any purpose in providing the ongoing Service.

ii. These beta features are provided **AS IS, with all faults. Customer assumes all risk arising from use of such features, including, without limitation, the risk of damage to Customer's computer system or the corruption or loss of data.**

## f) No Assignment

i. Tebra may assign or transfer the Customer Agreement (or its rights and/or obligations) to any third party without Customer's consent.

ii. Customer may not assign or transfer the Customer Agreement to a third party without the prior written consent of Tebra, except that the Customer Agreement may be assigned (without Tebra's consent but with notice) as part of a merger, or sale of all or substantially all of the business or assets, of Customer.

iii. The Customer Agreement will bind and inure to the benefit of each party's successors and permitted assigns.

## g) Independent Contractors and Enforceability

i. The parties are independent contractors with respect to each other.

ii. If any term of the Customer Agreement is invalid or unenforceable, the other terms remain in effect.

## h) Survival of Terms

All terms survive termination of the Customer Agreement that by their nature survive for a party to assert its rights and receive the protections of the Customer Agreement.

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

i) **Customer Name**

Tebra may use Customer's name and logo in customer lists and related promotional materials describing Customer as a customer of Tebra, which use must be in accordance with Customer's trademark guidelines and policies, if any, provided to Tebra. Customer may opt out of this provision by sending written notice to legal@tebra.com.

j) **Force Majeure**

Except for the obligation to pay money, neither party will be liable for any failure or delay in its performance under the Customer Agreement due to any cause beyond its reasonable control, including acts of war, acts of God, earthquake, flood, embargo, riot, sabotage, labor shortage or dispute, governmental act or failure of the Internet, provided that the delayed party:

   i. gives the other party prompt notice of such cause, and
   ii. uses its reasonable commercial efforts to correct promptly such failure or delay in performance.

k) **Notice**

   i. Except as otherwise provided herein, any notice or communication required or permitted to be given hereunder may be delivered by hand, deposited with an overnight courier, sent by confirmed facsimile, or mailed by registered or certified mail, return receipt requested, postage prepaid to the address for the applicable party as furnished in writing by either party hereto to the other. Tebra's address for notice is: 1111 Bayside Drive, Corona Del Mar, CA 92625, Attn: General Counsel, and by email to: legal@tebra.com.
   ii. Such notice will be deemed to have been given as of the date it is delivered, mailed or sent, whichever is earlier.

**Updated effective June 1, 2023**

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

Best,

Jason Dussan



Jason Dussan | Tebra | Strategic Account Manager | Practice Operations
Office: 949-247-5603
jason.dussan@tebra.com

How am I doing? We want your feedback!  Click Here.

On Thu, Nov 2, 2023 at 5:49 AM Erica Martino <erica@joemartino.com> wrote:
Good Morning Jason,
I am hoping you can help me. I am at my wits in with Tebra. My Blue Cross claims are once again messed up. I have 147 rejections. All the claims go out fine one week then the next week there is another issue. This has been going on about 6 weeks now. As a result, our company keeps needing to borrow money as these these Tebra issues have now cost us over $50,000.
I have called everyday on the newest issue and can't get through. I even created an online case and haven't heard back. The case was created on Monday which means now there is no way I get money back on them by next week, which will once again cause me to not be able to pay my bills. A couple of my employees can't even get on the Tebra billing because of issues with Parrells not working.
I have 4 providers that I am paying for that haven't been with me for a month now; however I can't remove them because I can't get my claims to go through.
I feel like at this point Tebra needs to reimburse me for the lost revenue and not charge me for the employees that I have to keep on because of the billing issues.
Let me know what Tebra is willing to do to help rectify this situation or I will have no other choice but to seek legal counselor.

Thank you,
Erica Martino
Sent from my iPhone

3

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC



EXHIBIT
D

Jason Dussan | Tebra | Strategic Account Manager | Practice Operations
Office: 949-247-5603
jason.dussan@tebra.com

How am I doing? We want your feedback!  Click Here.


On Tue, Nov 7, 2023 at 9:59 AM Erica Martino <erica@joemartino.com> wrote:
Hi Jason,
We have signed an agreement with another system. I was told I would hear back on the issue on Friday. I just got a response asking me for the providers name. This has been unacceptable service. I do not want to pay another dime to Tebra including the invoice on the 10th. Tebra has cost me thousands of dollars in back up claims. I do have an attorney ready to help me with this situation. I do not want it to escalate. I am hoping we can resolve between us.

Sincerely,

Erica Martino MA, LPC
Owner, Therapist
erica@joemartino.com
joemartinocounseling.com
Find us on Facebook!
P. 616-481-3784 F. 866-496-2998

The content of this email is confidential and intended for the recipient specified in message only. It is strictly forbidden to share any part of this message with any third party, without a written consent of the sender. If you received this message by mistake, please reply to this message and follow with its deletion, so that we can ensure such a mistake does not occur in the future.

On Nov 3, 2023, at 1:34 PM, Jason Dussan <jason.dussan@tebra.com> wrote:

Hi Erica,

Thank you for making me aware of this issue. Could you please share the case numbers related to the Blue Cross rejections? I would be glad to escalate these cases to my management team and extend a credit to your account if the rejections are caused by a system error.

I reviewed some of the rejections and saw that the claim was accepted by the payer. However, at the account level, it states that the payer acknowledged/accepted the claim. Have you contacted the payer to confirm the accuracy of this information?

Our support team emailed the point of contact listed on case number 02940060 the new link to download Parallels. Please confirm receipt.

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

management team and extend a credit to your account if the rejections are caused by a system error.

I reviewed some of the rejections and saw that the claim was accepted by the payer. However, at the account level, it states that the payer acknowledged/accepted the claim. Have you contacted the payer to confirm the accuracy of this information?

Our support team emailed the point of contact listed on case number 02940060 the new link to download Parallels. Please confirm receipt.

Best,

Jason Dussan





✢ tebra  | Built on the strength of
              Kareo and PatientPop

Jason Dussan | Tebra | Strategic Account Manager | Practice Operations
Office: 949-247-5603
jason.dussan@tebra.com

How am I doing? We want your feedback!  Click Here.

On Thu, Nov 2, 2023 at 5:49 AM Erica Martino <erica@joemartino.com> wrote:

Good Morning Jason,

I am hoping you can help me. I am at my wits in with Tebra. My Blue Cross claims are once again messed up. I have 147 rejections. All the claims go out fine one week then the next week there is another issue. This has been going on about 6 weeks now. As a result, our company keeps needing to borrow money as these these Tebra issues have now cost us over $50,000.

I have called everyday on the newest issue and can't get through. I even created an online case and haven't heard back. The case was created on Monday which means now there is no way I get money back on them by next week, which will once again cause me to not be able to pay my bills. A couple of my employees can't even get on the Tebra billing because of issues with Parrells not working.

I have 4 providers that I am paying for that haven't been with me for a month now;

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

however I can't remove them because I can't get my claims to go through.
I feel like at this point Tebra needs to reimburse me for the lost revenue and not
charge me for the employees that I have to keep on because of the billing issues.
Let me know what Tebra is willing to do to help rectify this situation or I will have no
other choice but to seek legal counselor.

Thank you,
Erica Martino
Sent from my iPhone

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

## Michelle McLean

**From:** Erica Martino <erica@joemartino.com>
**Sent:** Tuesday, November 7, 2023 6:10 PM
**To:** "
**Subject:** Fwd: Tebra issues



Sent from my iPhone

Begin forwarded message:

> **From:** Jason Dussan <jason.dussan@tebra.com>
> **Date:** November 7, 2023 at 3:07:42 PM CST
> **To:** Erica Martino <erica@joemartino.com>
> **Cc:** Joe Martino <joe@joemartino.com>, Lindsay Bryan <lindsay@joemartinocounseling.com>
> **Subject: Re: Tebra issues**

Hi Erica,

Thank you for your email. I'm sorry to say that I don't have the authority to hold your payment or cancel your account. However, I can get our Loyalty team involved to assist you. I understand that you may be upset with our service, and I apologize for any inconvenience caused. Our Customer Care team has specific company guidelines and policies to help address issues and resolve them. A reminder that per our terms of service, we require at least 30-60 days notice to cancel accounts. I have created a ticket with our Loyalty team regarding your request for a credit and your mention of signing an agreement with another system. Below is the case number for your reference. I will escalate this matter to ensure that someone contacts you immediately.

Let me know if you have any questions.

Case Number: 02950585

Best,

Jason Dussan



1

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

The content of this email is confidential and intended for the recipient specified in message only. It is strictly forbidden to share any part of this message with any third party, without a written consent of the sender. If you received this message by mistake, please reply to this message and follow with its deletion, so that we can ensure such a mistake does not occur in the future.



EXHIBIT
F

On Nov 10, 2023, at 11:53 AM, Erica Martino <erica@joemartino.com> wrote:

Emayralin,
Thank you for providing me with a copy of the "Business Associate Agreement." though my Tebra account. Prior to yesterday, I had not received a copy of this agreement, and I never signed one. I am not bound by the terms of this agreement. In fact, the agreement that I had signed back in 2019 was the last one that I have a record of having signed. That agreement has already expired, and I am no longer required to give notice to terminate services.

If any agreement is to be inferred, then Tebra is the first breaching party. Tebra failed to timely process claims beginning in September 2023, causing my business to have to borrow money to cover ordinary expenses that were typically covered through our incoming cash flow. I have numerous records of times where I reached out for help, only to wait days and days with no response or even an inadequate response considering the financial crisis caused by Tebra to my business.

I terminated my banking authorization and Tebra is no longer allowed to withdraw funds for services. If you wish to avoid a protracted breach of contract lawsuit, then please immediately do the following: (1) Provide my new claims processing company with direct access to ALL the data associated with my account at no extra cost to me; (2) continue to allow me to have access to your system through November 27; and (3) refund all or a portion of my payments for your services for September and October 2023 and cover any loan interest that has occurred during this months. I am prepared to proceed with a law suit, if necessary, but wish to resolve this amicably.

Please advise asap as to Tebra's position and how Tebra wishes to proceed. I have copied my attorney on this email.

Sincerely,

Erica Martino MA, LPC
Owner, Therapist
erica@joemartino.com
joemartinocounseling.com
Find us on Facebook!
P. 616-481-3784 F. 866-496-2998

The content of this email is confidential and intended for the recipient specified in message only. It is strictly forbidden to share any part of this message with any third party, without a written consent of the sender. If you received this message by mistake, please reply to this message and follow with its deletion, so that we can ensure such a mistake does not occur in the future.

On Nov 10, 2023, at 11:32 AM, Emayralin Temple <emayralin.temple@tebra.com> wrote:

Hello Erica.

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

Hope that my email finds you well.

This follow up email is regarding your cancellation request. We are very sorry about the inconvenience, it seems like there have been some issues with claims rejections, I'll be more than happy to connect you with a support representative.

In regards to your cancellation we do request a 30-60 days notice, the account can be scheduled to cancel by 11/30/2023.

Let me know if you have any additional questions or concerns.

Kind regards


--

Emma T.
Customer Loyalty Specialist.
Phone number  949-509-2461

 tebra

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

**EXHIBIT**
**G**

**Michelle McLean**

| | |
|---|---|
| **From:** | Erica Martino <erica@joemartino.com> |
| **Sent:** | Monday, November 27, 2023 2:46 PM |
| **To:** | Emayralin Temple; Tebra Customer Care |
| **Cc:** | Michelle McLean |
| **Subject:** | Re: Cancellation Request Case 02950585 (RESENDING) |

Emayralin,

I have not heard a reply from you in 10 days. My account has now been cancelled. I am requesting access to get my appointment data for the remainder of this week. None of your emails indicated that my access would be denied on the 27th. You said you require a 30-60 days notice to end my account but you shut me out after two weeks of non-payment?! That is ridiculous. Please send me my data asap!

Erica Martino MA, LPC
Owner, Therapist
erica@joemartino.com
joemartinocounseling.com
Find us on Facebook!
P. 616-481-3784 F. 866-496-2998

The content of this email is confidential and intended for the recipient specified in message only. It is strictly forbidden to share any part of this message with any third party, without a written consent of the sender. If you received this message by mistake, please reply to this message and follow with its deletion, so that we can ensure such a mistake does not occur in the future.

On Nov 20, 2023, at 8:31 AM, Erica Martino <erica@joemartino.com> wrote:

Sincerely,

Erica Martino MA, LPC
Owner, Therapist
erica@joemartino.com
joemartinocounseling.com
Find us on Facebook!
P. 616-481-3784 F. 866-496-2998

The content of this email is confidential and intended for the recipient specified in message only. It is strictly forbidden to share any part of this message with any third party, without a written consent of the sender. If you received this message by mistake, please reply to this message and follow with its deletion, so that we can ensure such a mistake does not occur in the future.

Begin forwarded message:

**From:** Erica Martino <erica@joemartino.com>
**Subject: Re: Cancellation Request Case 02950585**
**Date:** November 10, 2023 at 11:53:54 AM EST

1

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

Kind regards .

> **EXHIBIT**
>
> H

On Wed, Nov 15, 2023 at 12:09 PM Michelle McLean <michellem@bolhouselaw.com> wrote:

Emayralin:

Please be advised that Tebra's refusal to transfer the requested data to CureMD is clearly a demonstration of "bad faith."

Please provide this data without further delay to avoid compounding damages.

Regards,

Michelle M. McLean, Esquire

Attorney for Joe Martino Counseling

Michelle M. McLean

Bolhouse, Hofstee, & McLean PC

3996 Chicago Dr. SW

Grandville, MI  49418

616-531-7711

616-706-1127 Cell

**From:** Erica Martino <erica@joemartino.com>
**Sent:** Wednesday, November 15, 2023 3:03 PM

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

## Michelle McLean

| | |
|---|---|
| **From:** | Emayralin Temple <emayralin.temple@tebra.com> |
| **Sent:** | Friday, November 17, 2023 4:44 PM |
| **To:** | Erica Martino |
| **Cc:** | Michelle McLean; Niven Cyril |
| **Subject:** | Re: Cancellation Request Case 02950585 |



Hello Erica.

Unfortunately, We don't provide free services for Data export and past due fees need to be paid to keep your on demand access.

Please let me know if you would like for me to submit the request for the data export, the process may take up to a month or two due to high volume.

On Fri, Nov 17, 2023 at 10:43 AM Erica Martino <erica@joemartino.com> wrote:
Emayrin,
Thank you for responding. We have extracted most of our demographic data on our own. Could you please open a ticket for CureMD to have my documents and patient notes at no extra cost to me.
Tebra's inability to respond in a timely manner has caused my Go Live date with CureMD to be delayed until the first week of December. I received a notice today that my account is delinquent and if I do not pay Tebra my services will be interrupted. I will not be paying for anymore services and expect my account to remain open until all data is exported. I will be out of your system as soon as you cooperate in getting me the requested data.

Niven, from CureMD is copied on this email. He has my permission to receive my data for integration.

Sincerely,
Erica Martino

Sent from my iPhone

> On Nov 17, 2023, at 12:51 PM, Emayralin Temple <emayralin.temple@tebra.com> wrote:
>
> Hello everyone.
>
> Hope that my email finds you well.
>
> As previously stated there is no contract attached to this account, expiration date was 5/31/2023.
> Regarding the data export I don't see a ticket request on file, if you like I can submit the request for you.
>
> The data team will get in contact with you to provide the information and the fee related to the services, the account is ready for cancellation 11/30/2023 if you wish to push back the cancellation, we can leave one provider active to keep access to the services.
>
> Please be aware that for any account changes we require at least a 10 day notice.

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

## Michelle McLean

| | |
|---|---|
| **From:** | Erica Martino <erica@joemartino.com> |
| **Sent:** | Friday, November 17, 2023 2:02 PM |
| **To:** | Emayralin Temple |
| **Cc:** | Niven Cyril; Michelle McLean |
| **Subject:** | Fwd: Joe Martino Counseling | PM Analysis New Dataset | 11/17/2023 |

**EXHIBIT**

**1**

Unfortunately, the data from the billing system that we were able to download is missing a lot of important patient information. Can you please assist Niven in getting ALL our data. We would
like this data by Monday. The longer it takes to provide this information longer it will take us to be out of Tebra.

Sent from my iPhone

Begin forwarded message:

> **From:** Niven Cyril <Niven.Cyril@curemd.com>
> **Date:** November 17, 2023 at 1:55:53 PM EST
> **To:** Erica Martino <erica@joemartino.com>
> **Cc:** Kendra Martino <kendra@joemartinocounseling.com>, Tahmid Alam <tahmid.alam@curemd.com>, Dennis Wood <Dennis.Wood@curemd.com>, Mike Jones <mike.jones@curemd.com>, Ghanya Bokhari <ghanya.bokhari@curemd.com>, DMS <DMS@curemd.com>, Brent Jones <brent.jones@curemd.com>
> **Subject:** Re: Joe Martino Counseling | PM Analysis New Dataset | 11/17/2023

Hi Erica,

Yes, please forward this PM analysis to TEBRA so we can have a response from them on these missing items. (Hopefully in a timely manner).

Moreover, 3800 patients have insurance information only for the following fields:

- Priority
- Policy Number
- Group Number

Regards,

---

**Niven Cyril**
Principal Customer Success Analyst
Data Migrations & Customizations

**CureMD Healthcare**
120 Broadway | New York, NY 10271 | USA
P 718-684-9298 x 210
niven.cyril@curemd.com

curemd.com | Blog | Whitepapers | Map

This email may contain confidential and/or private information.
If you received this email in error please delete and notify sender.

1

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

> EXHIBIT
> ᒑ

## Michelle McLean

**From:** Emayralin Temple <emayralin.temple@tebra.com>
**Sent:** Wednesday, November 29, 2023 8:40 AM
**To:** Erica Martino
**Cc:** Tebra Customer Care; Michelle McLean
**Subject:** Re: Cancellation Request Case 02950585 (RESENDING)

Good Morning Erica.

Hope all is well with you.

As previously stated, in order for you to get access to the records there needs to be a payment as we do not offer any services for free. And I dont have the access or tools to provide those records. I did reach out to Legal but haven't received a response, I can try to reach out again.

On Mon, Nov 27, 2023 at 11:46 AM Erica Martino <erica@joemartino.com> wrote:

Emayralin,

I have not heard a reply from you in 10 days. My account has now been cancelled. I am requesting access to get my appointment data for the remainder of this week. None of your emails indicated that my access would be denied on the 27th. You said you require a 30-60 days notice to end my account but you shut me out after two weeks of non-payment?! That is ridiculous. Please send me my data asap!

Erica Martino MA, LPC
Owner, Therapist
erica@joemartino.com
joemartinocounseling.com
Find us on Facebook!
P. 616-481-3784 F. 866-496-2998

The content of this email is confidential and intended for the recipient specified in message only. It is strictly forbidden to share any part of this message with any third party, without a written consent of the sender. If you received this message by mistake, please reply to this message and follow with its deletion, so that we can ensure such a mistake does not occur in the future.

On Nov 20, 2023, at 8:31 AM, Erica Martino <erica@joemartino.com> wrote:

Sincerely,

Erica Martino MA, LPC
Owner, Therapist
erica@joemartino.com
joemartinocounseling.com
Find us on Facebook!
P. 616-481-3784 F. 866-496-2998

The content of this email is confidential and intended for the recipient specified in message only. It is strictly forbidden to share any part of this message with any third party, without a written consent of the sender. If you received this message by mistake, please reply to this message and follow with its deletion, so that we can ensure such a mistake does not occur in the future.

1

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC





EXHIBIT

C

Tebra Technologies, Inc.
Dept. LA 24853
Pasadena, CA 91185-4853
accounting@tebra.com

## INVOICE

| DATE | INVOICE # |
|---|---|
| 11/01/2023 | 202311-71532 |

**TERMS**

Your electronic payment will be processed by the 10th of the month. You do not need to mail a check.

**BILL TO**

Erica Martino
Joe Martino Counseling
2305 E Paris Ave S E #203
Grand Rapids, MI  49546-2426

| AMOUNT DUE | ENCLOSED |
|---|---|
| $ 3,612.04 | |

— — — — — — — —   Please detach top portion and return with your payment   — — — — — — — —

| START DATE | END DATE | PRODUCT | Qty | Total |
|---|---|---|---|---|
| For period 10/01/2023 - 10/31/2023 | | | | |
| 10/01/2023 | 10/31/2023 | Electronic Claim Processing | 141 | $ 90.09 |
| 10/02/2023 | 10/31/2023 | Kareo Plus | 2 | $ 230.95 |
| For period 11/01/2023 - 11/30/2023 | | | | |
| 11/01/2023 | 11/30/2023 | Kareo Plus | 19 | $ 3,291.00 |
| | | **Total Amount Due** | | **$ 3,612.04** |

Page 1 of 3

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

## Joe Martino Counseling

### For period 10/01/2023 - 10/31/2023

#### Monthly Subscription Fees

##### Kareo Plus

| Practice Name | Provider Name | Provider Type | Start Date | End Date | Qty | Allowance | Billed Qty | Price | Total |
|---|---|---|---|---|---|---|---|---|---|
| Joe Martino Counselin | DANA BABINSKY | Low-Volume Non | 10/14/2023 | 10/31/2023 | 1 | 0 | 1 | $ 149.00 | $ 86.42 |
| | **Comments: Prorated from the Provider activation date | | | | | | | | |
| Joe Martino Counselin | Faith Williamson | Low-Volume Non | 10/02/2023 | 10/31/2023 | 1 | 0 | 1 | $ 149.00 | $ 144.53 |
| | **Comments: Prorated from the Provider activation date | | | | | | | | |
| | | | | | 2 | 0 | 2 | $ 298.00 | $ 230.95 |

#### Transactional Fees

##### Electronic Claims

| Practice Name | Provider Name | Provider Type | Start Date | End Date | Qty | Allowance | Billed Qty | Price | Total |
|---|---|---|---|---|---|---|---|---|---|
| Joe Martino Counselin | Ashley Houdek | Low-Volume Non | 10/01/2023 | 10/31/2023 | 141 | 50 | 91 | $ 0.99 | $ 90.09 |
| Joe Martino Counselin | CASSANDRA GAGLIAR | Non-Physician | 10/01/2023 | 10/31/2023 | 129 | 0 | 129 | $ 0.00 | $ 0.00 |
| Joe Martino Counselin | CASSIE GAIL BUEKER | Low-Volume Non | 10/01/2023 | 10/31/2023 | 34 | 50 | 0 | $ 0.99 | $ 0.00 |
| Joe Martino Counselin | DAVID TILLEMA | Non-Physician | 10/01/2023 | 10/31/2023 | 73 | 0 | 73 | $ 0.00 | $ 0.00 |
| Joe Martino Counselin | ERICA DAWN MARTINO | Therapist | 10/01/2023 | 10/31/2023 | 114 | 0 | 114 | $ 0.00 | $ 0.00 |
| Joe Martino Counselin | JOSEPH C DRUMM | Supervising Phys | 10/01/2023 | 10/31/2023 | 56 | 0 | 56 | $ 0.00 | $ 0.00 |
| Joe Martino Counselin | JOSEPH PAUL MARTIN | Therapist | 10/01/2023 | 10/31/2023 | 823 | 0 | 823 | $ 0.00 | $ 0.00 |
| Joe Martino Counselin | KAREN L SALERNO | Therapist | 10/01/2023 | 10/31/2023 | 49 | 0 | 49 | $ 0.00 | $ 0.00 |
| Joe Martino Counselin | KYLE ALAN FORD | Low-Volume Non | 10/01/2023 | 10/31/2023 | 7 | 50 | 0 | $ 0.99 | $ 0.00 |
| Joe Martino Counselin | MARY S GILBERT | Supervising Phys | 10/01/2023 | 10/31/2023 | 48 | 0 | 48 | $ 0.00 | $ 0.00 |
| Joe Martino Counselin | SARAH VIRGINIA BULT | Therapist | 10/01/2023 | 10/31/2023 | 67 | 0 | 67 | $ 0.00 | $ 0.00 |
| Joe Martino Counselin | Shannon McGee | Non-Physician | 10/01/2023 | 10/31/2023 | 108 | 0 | 108 | $ 0.00 | $ 0.00 |
| Joe Martino Counselin | STEPHANIE ROSE WE | Low-Volume Non | 10/01/2023 | 10/31/2023 | 32 | 50 | 0 | $ 0.99 | $ 0.00 |
| | | | | | 1,681 | 200 | 1558 | $ 3.96 | $ 90.09 |

##### Electronic Remittance

| Practice Name | Provider Name | Provider Type | Start Date | End Date | Qty | Allowance | Billed Qty | Price | Total |
|---|---|---|---|---|---|---|---|---|---|
| Joe Martino Counselin | | | 10/01/2023 | 10/31/2023 | 1,331 | 0 | 1331 | $ 0.00 | $ 0.00 |
| | | | | | 1,331 | 0 | 1331 | $ 0.00 | $ 0.00 |

##### Document Storage

| Practice Name | Provider Name | Provider Type | Start Date | End Date | Qty | Allowance | Billed Qty | Price | Total |
|---|---|---|---|---|---|---|---|---|---|
| Joe Martino Counselin | | | 10/01/2023 | 10/31/2023 | 316 | 0 | 4 | $ 0.00 | $ 0.00 |
| | | | | | 316 | 0 | 4 | $ 0.00 | $ 0.00 |

##### Eligibility

| Practice Name | Provider Name | Provider Type | Start Date | End Date | Qty | Allowance | Billed Qty | Price | Total |
|---|---|---|---|---|---|---|---|---|---|
| Joe Martino Counselin | | | 10/01/2023 | 10/31/2023 | 539 | 0 | 539 | $ 0.00 | $ 0.00 |
| | | | | | 539 | 0 | 539 | $ 0.00 | $ 0.00 |

| | | |
|---|---|---|
| | Subtotal for Period 10/01/2023 - 10/31/2023 | $ 321.04 |

### For period 11/01/2023 - 11/30/2023

#### Monthly Subscription Fees

##### Kareo Plus

| Practice Name | Provider Name | Provider Type | Start Date | End Date | Qty | Allowance | Billed Qty | Price | Total |
|---|---|---|---|---|---|---|---|---|---|
| Joe Martino Counselin | Ashley Houdek | Low-Volume Non | 11/01/2023 | 11/30/2023 | 1 | 0 | 1 | $ 149.00 | $ 149.00 |
| Joe Martino Counselin | CASSANDRA GAGLIAR | Non-Physician | 11/01/2023 | 11/30/2023 | 1 | 0 | 1 | $ 299.00 | $ 299.00 |
| Joe Martino Counselin | CASSIE GAIL BUEKER | Low-Volume Non | 11/01/2023 | 11/30/2023 | 1 | 0 | 1 | $ 149.00 | $ 149.00 |
| Joe Martino Counselin | DANA BABINSKY | Low-Volume Non | 11/01/2023 | 11/30/2023 | 1 | 0 | 1 | $ 149.00 | $ 149.00 |
| Joe Martino Counselin | DAVID TILLEMA | Non-Physician | 11/01/2023 | 11/30/2023 | 1 | 0 | 1 | $ 149.00 | $ 149.00 |
| Joe Martino Counselin | ERICA DAWN MARTINO | Therapist | 11/01/2023 | 11/30/2023 | 1 | 0 | 1 | $ 299.00 | $ 299.00 |
| Joe Martino Counselin | Faith Williamson | Low-Volume Non | 11/01/2023 | 11/30/2023 | 1 | 0 | 1 | $ 199.00 | $ 199.00 |
| Joe Martino Counselin | ISABELLE MATTHEWS | Low-Volume Non | 11/01/2023 | 11/30/2023 | 1 | 0 | 1 | $ 149.00 | $ 149.00 |
| Joe Martino Counselin | JOSEPH C DRUMM | Supervising Phys | 11/01/2023 | 11/30/2023 | 1 | 0 | 1 | $ 54.00 | $ 54.00 |
| Joe Martino Counselin | JOSEPH PAUL MARTIN | Therapist | 11/01/2023 | 11/30/2023 | 1 | 0 | 1 | $ 199.00 | $ 199.00 |
| Joe Martino Counselin | KAREN L SALERNO | Therapist | 11/01/2023 | 11/30/2023 | 1 | 0 | 1 | $ 199.00 | $ 199.00 |
| Joe Martino Counselin | KYLE ALAN FORD | Low-Volume Non | 11/01/2023 | 11/30/2023 | 1 | 0 | 1 | $ 149.00 | $ 149.00 |
| Joe Martino Counselin | MADISON ELAINE-MAA | Low-Volume Non | 11/01/2023 | 11/30/2023 | 1 | 0 | 1 | $ 149.00 | $ 149.00 |

Remit: Tebra Technologies, Inc. Dept. LA 24853, Pasadena, CA 91185-4853

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Joe Martino Counselin | MARK SCOTT OLSON | Low-Volume Non | 11/01/2023 | 11/30/2023 | 1 | 0 | 1 | $ 149.00 | $ 149.00 |
| Joe Martino Counselin | MARY S GILBERT | Supervising Phys | 11/01/2023 | 11/30/2023 | 1 | 0 | 1 | $ 54.00 | $ 54.00 |
| Joe Martino Counselin | SARAH VIRGINIA BULT | Therapist | 11/01/2023 | 11/30/2023 | 1 | 0 | 1 | $ 199.00 | $ 199.00 |
| Joe Martino Counselin | Shannon McGee | Non-Physician | 11/01/2023 | 11/30/2023 | 1 | 0 | 1 | $ 299.00 | $ 299.00 |
| Joe Martino Counselin | STEPHANIE ROSE WE | Low-Volume Non | 11/01/2023 | 11/30/2023 | 1 | 0 | 1 | $ 149.00 | $ 149.00 |
| Joe Martino Counselin | Taylor Brodbeck | Low-Volume Non | 11/01/2023 | 11/30/2023 | 1 | 0 | 1 | $ 149.00 | $ 149.00 |
| | | | | | 19 | 0 | 19 | $ 3,291.00 | $ 3,291.00 |

| Subtotal for Period 11/01/2023 - 11/30/2023 | $ 3,291.00 |
|---|---|

**Total Invoice Amount**          $ 3,612.04

Remit: Tebra Technologies, Inc. Dept. LA 24853, Pasadena, CA 91185-4853

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

## Michelle McLean

| | |
|---|---|
| **From:** | Erica Martino <erica@joemartino.com> |
| **Sent:** | Wednesday, November 29, 2023 10:53 AM |
| **To:** | Emayralin Temple |
| **Cc:** | Tebra Customer Care; Michelle McLean |
| **Subject:** | Re: Cancellation Request Case 02950585 (RESENDING) |

Emayralin,

I will pay the past due balance and add it to our lawsuit. Since I am paying, I am requesting my access to the system remain available until the completion of this billing cycle which is the 10th. I will no longer need any access to your system after that date.

Sincerely,

Erica Martino MA, LPC
Owner, Therapist
erica@joemartino.com
joemartinocounseling.com
Find us on Facebook!
P. 616-481-3784 F. 866-496-2998

The content of this email is confidential and intended for the recipient specified in message only. It is strictly forbidden to share any part of this message with any third party, without a written consent of the sender. If you received this message by mistake, please reply to this message and follow with its deletion, so that we can ensure such a mistake does not occur in the future.

On Nov 29, 2023, at 8:39 AM, Emayralin Temple <emayralin.temple@tebra.com> wrote:

Good Morning Erica.

Hope all is well with you.

As previously stated, in order for you to get access to the records there needs to be a payment as we do not offer any services for free. And I dont have the access or tools to provide those records. I did reach out to Legal but haven't received a response, I can try to reach out again.

On Mon, Nov 27, 2023 at 11:46 AM Erica Martino <erica@joemartino.com> wrote:
Emayralin,

I have not heard a reply from you in 10 days. My account has now been cancelled. I am requesting access to get my appointment data for the remainder of this week. None of your emails indicated that my access would be denied on the 27th. You said you require a 30-60 days notice to end my account but you shut me out after two weeks of non-payment?!  That is ridiculous. Please send me my data asap!

Erica Martino MA, LPC
Owner, Therapist
erica@joemartino.com
joemartinocounseling.com
Find us on Facebook!
P. 616-481-3784 F. 866-496-2998

The content of this email is confidential and intended for the recipient specified in message only. It is strictly forbidden to share any part of this message with any third party, without a written consent of the sender. If

DocuSign Envelope ID: 477F136C-8D4B-4FB0-B994-BAA929D1C4AC

**Michelle McLean**

EXHIBIT

N

| | |
|---|---|
| **From:** | Michelle McLean |
| **Sent:** | Wednesday, November 15, 2023 3:10 PM |
| **To:** | Erica Martino; Emayralin Temple |
| **Cc:** | Niven Cyril |
| **Subject:** | RE: Cancellation Request Case 02950585 |

Emayralin:

Please be advised that Tebra's refusal to transfer the requested data to CureMD is clearly a demonstration of "bad faith."

Please provide this data without further delay to avoid compounding damages.

Regards,

Michelle M. McLean, Esquire
Attorney for Joe Martino Counseling


Michelle M. McLean
Bolhouse, Hofstee, & McLean PC
3996 Chicago Dr. SW
Grandville, MI 49418
616-531-7711
616-706-1127 Cell


**From:** Erica Martino <erica@joemartino.com>
**Sent:** Wednesday, November 15, 2023 3:03 PM
**To:** Emayralin Temple <emayralin.temple@tebra.com>
**Cc:** Michelle McLean <michellem@bolhouselaw.com>; Niven Cyril <Niven.Cyril@curemd.com>
**Subject:** Re: Cancellation Request Case 02950585

Hello Emayralin,
I have not heard back from you yet. I really need the rest of my data which includes notes, insurance information and all the remaining documents and information associated with patient accounts. Your lack of response is holding up our practices ability to move our services to CureMD. The lack of response is also holding up our ability to ensure accurate and timely billing. Please advise Niven, who is Cc'd on this email when he can get the rest of the data and how that will come to him.

Sincerely,

Erica Martino MA, LPC
Owner, Therapist
erica@joemartino.com
joemartinocounseling.com
Find us on Facebook!
P. 616-481-3784 F. 866-496-2998

1

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF KENT

JOE MARTINO COUNSELING, PLLC,

    Plaintiff,

v.

TEBRA TECHNOLOGIES, INC.,

    Defendant,

Case No:  23-      -CBB

HON.

---

Michelle M. McLean (P71393)
Matthew F. Burns (P75281)
BOLHOUSE, HOFSTEE & MCLEAN,
P.C.
Attorneys for Plaintiff
3996 Chicago Drive S.W.
Grandville, Michigan 49418
(616) 531-7733

---

## PLAINTIFF'S EX-PARTE MOTION FOR A TEMPORARY RESTRAINING ORDER PURSUANT TO MCR 3.310(B)

### *** EXPEDITED CONSIDERATION REQUESTED ***

NOW COMES Plaintiffs, Joe Martino Counseling, PLLC ("Martino Counseling") by and through its attorneys, BOLHOUSE, HOFSTEE & MCLEAN, P.C., and asks this Honorable Court to issue a Temporary Restraining Order against Defendant, Tebra Technologies, Inc. ("Tebra") and to order Defendant as to show cause as to why a preliminary injunction should be issued against Tebra pursuant to MCR 3.310.  Martino Counseling's Motion is supported by the attached brief.

Martino Counseling hereby requests this Court order the following:

1. Defendant to be immediately enjoined from withholding Plaintiff's data and patient information, including but not limited to claims, billing records, scheduling information, file

notes, and any other information or data related to Martino Counseling that is currently in the possession of Defendant.

2. Defendant must preserve any and all records of Martino Counseling whether held digitally, physically, or otherwise by Defendant.

3. Defendant must immediately release information and possession of the Plaintiff's bills and claims to CureMD, including any of Martion Counseling's patient information, payor information, or any and all other documents, data, or information necessary for CureMD to process and bill Plaintiff's outstanding claims and to protect Plaintiff's clients' HIPPA privileged information.

4. This order shall remain in full force and effect until this Court specifically orders otherwise.

5. Defendants shall show cause before this Court as to why a preliminary injunction should not be ordered according to the terms and conditions set forth herein.

6. This motion is supported by Plaintiff's Verified Complaint.

7. A copy of the proposed Ex-Parte Temporary Restraining Order is attached as **Exhibit A.**

Respectfully Submitted:

Dated: December _1_, 2023        By:_____

Michelle M. McLean (P71393)
Matthew F. Burns (P75281)
Bolhouse, Hofstee & McLean, PC
Grandville State Bank Building
3996 Chicago Drive SW
Grandville MI 49418
Phone: (616) 531-7711
Attorneys for Plaintiff



STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF KENT

JOE MARTINO COUNSELING, PLLC,

Plaintiff,                                    Case No:  23-            -CBB

v.                                            HON.

TEBRA TECHNOLOGIES, INC.,

Defendant,

_____

Michelle M. McLean (P71393)
Matthew F. Burns (P75281)
BOLHOUSE,  HOFSTEE  &  MCLEAN,
P.C.
Attorneys for Plaintiff
3996 Chicago Drive S.W.
Grandville, Michigan 49418
(616) 531-7733

_____

### EX-PARTE TEMPORARY RESTRAINING ORDER PURSUANT TO MCR 3.310(B)

At a session of said Court held in the Kent County Circuit
Court, State of Michigan  on
the ____ day of _____, 2023:

**PRESENT:**   _____
                        **Circuit Court Judge**

This matter came before the Court upon the ex-parte motion filed by the Plaintiff; the Court having determined that Plaintiff met the requirements set forth in MCR 3.310(B)(1)(a)-(c), and that the order may issue without a hearing; **NOW THEREFORE, IT IS SO ORDERED:**

1. Defendant shall be immediately enjoined from withholding Plaintiff's data and patient information, including but not limited to its claims, billing records, scheduling information, file notes, and any other information or data related to Martino Counseling that is currently in the possession of Defendant.

2. Defendant must preserve any and all records of Martino Counseling whether held digitally, physically, or otherwise by Defendant.

1

3. Defendant must immediately release information and possession of the Plaintiff's bills and claims to CureMD, including any of Martion Counseling's patient information, payor information, or any and all other documents, data, or information necessary for CureMD to process and bill Plaintiff's outstanding claims and to protect Plaintiff's clients' HIPPA privileged information.

4. This order was issued at _____ a.m./ p.m. on _____ 2023. MCR 3.310(B)(2)(a).

5. The injury to Plaintiff is significant lost profits, loss of patient good will, damage to its reputation, and disruption of the care and treatment of Plaintiff's patients which are irreparable, and is why this order was granted without notice to the Defendant. MCR 3.310(B)(2)(b).

6. Defendants shall appear and show cause before this Court on: _____, 2023 at _____ a.m./p.m. as to why this temporary order should be dissolved. Plaintiff shall serve this order on the Defendant and file a Notice of Hearing and Proof of Service with this Court. MCR 3.310(B)(2)(c).

7. This motion is supported by Plaintiff's Verified Complaint. MCR 3.310(B)(1)(a).

8. This order shall expire 14 days after its entry but may be extended upon a motion filed by Plaintiff explaining why good cause exists for its extension. MCR 3.310(B)(2)(3).

9. This order does not close the case file and does not resolve the last pending claim between the parties.

**IT IS SO ORDERED.**

Certified a True Copy:

_____
Deputy Court Clerk

_____
Honorable
Circuit Court Judge

2

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF KENT

JOE MARTINO COUNSELING, PLLC,

      Plaintiff,

v.

TEBRA TECHNOLOGIES, INC.,

      Defendant,

Case No:  23-            -CBB

HON.

Michelle M. McLean (P71393)
Matthew F. Burns (P75281)
BOLHOUSE, HOFSTEE & MCLEAN, P.C.
Attorneys for Plaintiff
3996 Chicago Drive S.W.
Grandville, Michigan 49418
(616) 531-7733

## PLAINTIFF'S BRIEF IN SUPPORT OF A MOTION FOR A TEMPORARY RESTRAINING ORDER PURSUANT TO MCR 3.310(B)

### *** EXPEDITED CONSIDERATION REQUESTED ***

### BACKGROUND FACTS

This matter could be the basis for any novel found in a grocery store line, one party abuses the relationship with a second party.  When the second party points out the first party's misgivings, the first party acts in anger and retaliation against the second party.  The difference between this matter and any cheesy romance novel in a grocery store is that the second party has suffered damages in the amount of hundreds of thousands of dollars due to the first party's blunders.

The first party is the Plaintiff, Joe Martino Counseling, PLLC ("Martino Counseling"), a Michigan based counseling service which operates out of Kent County, Michigan. (V. Comp. ¶ 1). The second party is the Defendant, Tebra Technologies ("Tebra"), a California corporation that is registered to engage in commerce in the State of Michigan. (V. Comp. ¶ 4). Martino Counseling hired Tebra (formerly known as Kareo, Inc.) in 2019 to perform various services that including sending out billing and claims, and maintaining the schedule for the therapists and counselors at

Martino Counseling. (V. Comp. ¶ 7- 8).  Since that initial agreement, there have been no renewals or updated signed contracts between the parties. (*Id.* ¶ 11).  Martino Counseling relied upon Tebra to act as its agent in the matters of billing, filing claims, and generally collecting money for services rendered by Martino Counseling. (*Id.* ¶ 15-16). From the initial contract in 2019, through November of 2023, Martino Counseling paid all monthly fees for Tebra to render the contracted services. (*Id.* ¶ 23).  Despite Martino Counseling's regular monthly payments, Tebra began to breach the contract between the parties in June 2023. (*Id.* ¶ 18).  By August 2023, Martino Counseling's daily operations were being affected.  (*Id.* ¶ 19-20).  The issues affecting Martino Counseling included failing to process claims to insurance companies, failing to manage patient scheduling, improperly designating payors of claims resulting in payments being sent to different providers other than Plaintiff, all resulting in lost or delayed income to Plaintifff. (*Id.* ¶ 20).

Moreover, as of October 2023, Martino Counseling discovered that no claims or invoices had been filed by Tebra on behalf of Martino Counseling. (*Id.* ¶ 22). As of the filing of the accompanying Verified Complaint, and this Motion, Tebra is holding $450,000.00 of unbilled claims or charges that are owed to Martino Counseling.  (*Id.* ¶ 51).

As a result of Tebra's lack of filing invoices and claims, Martino Counseling has sought and engaged a new practice management company, CureMD. (*Id.* ¶ 44).  When notified of the change, and that Martino Counseling originally advised Tebra would not pay the November 2023 invoice due to the fact that Tebra was the "first breaching party," Tebra retaliated by immediately shutting off Martino Counseling's access to its patient records and account information. (*Id.* ¶ 41).

The information that Martino Counseling has been able to obtain and send to CureMD has resulted in additional expenses of $193,600.00 for CureMD to be able to input data for Martino Counseling's account. (*Id.* ¶ 53).  Martino Counseling only obtained this information when it paid the November 2023 invoice, despite Tebra still not performing any duties on behalf of Martino Counseling. (*Id.* ¶ 51)  Tebra is continuing to hold Martino Counseling's client information, data,

and claims, including the unbilled $450,000.00 in claims that Martino Counseling needs to transfer to CureMD. (*Id.* ¶ 58).

Given Tebra's lack of cooperation in the transfer of data and Martino Counseling's fear of issues with serving their patients' mental health needs as well as Martino Counseling's losing significant unbilled income, Martino Counseling was left no choice but to file this motion. (*Id.* ¶ 90). Should Martino Counseling lose access to its information, it will lose at least $450,000.00 in income that Tebra previously did not invoice and there will be no way for them to re-create this information. This would be a significant irreparable harm, especially considering the information would be held solely in Tebra's control and Tebra has already shown it will act in a retaliatory manner.

Martino Counseling, is simply seeking the ability to obtain the information that is has already paid for, and owns, and needs to collect on the $450,000.00 in unbilled claims. Martino Counseling also needs a court order that Tebra will not destroy, alter, delete, or otherwise rid itself of the information and data held for, belonging to, or associated with Martino Counseling.

## LAW AND ARGUMENT

### A. Legal Standards

#### Court Rule Applicable to Temporary Restraining Order

Through this motion, Martino Counseling seeks a temporary restraining order under MCR 3.310(B) without a hearing.

MCR 3.310(B) provides, "A temporary restraining order may be granted without written or oral notice to the adverse party or the adverse party's attorney only if: (a) it clearly appears from specific facts shown by affidavit or by a verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant from the delay required to effect notice or from the risk that notice will itself precipitate adverse action before an order can be issued; (b) the applicant's attorney certifies to the court in writing the efforts, if any, that have been made

to give the notice and the reasons supporting the claim that notice should not be required; and (c) a permanent record or memorandum is made of any nonwritten evidence, argument, or other representations made in support of the application. See MCR 3.310(B)(1)(a)-(c).

Furthermore, MCR 3.310(B)(2) provides, "A temporary restraining order granted without notice must: (a) be endorsed with the date and time of issuance; (b) describe the injury and state why it is irreparable and why the order was granted without notice; (c) except in domestic relations actions, set a date for hearing at the earliest possible time on the motion for a preliminary injunction or order to show cause why a preliminary injunction should not be issued.

MCR 3.310(B)(3) provides, "Except in domestic relations actions, a temporary restraining order granted without notice expires by its terms within such time after entry, not to exceed 14 days, as the court sets unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period. The reasons for the extension must be stated on the record or in a document filed in the action.

Last, MCR 3.310(B)(4) provides, "A temporary restraining order granted without notice must be filed forthwith in the clerk's office and entered in the court records."

In the present case, Plaintiff's motion is supported by Plaintiff's detailed, verified complaint which demonstrates by specific facts that immediate and irreparable injury, loss, or damage will result to the Plaintiff (and Plaintiff's medical patients) from the delay required to effect notice or from the risk that notice will itself precipitate adverse action before an order can be issued. Also, Plaintiff's attorney has attempted to provide notice to Tebra of the request for a Temporary Restraining Order, and at this time Tebra will suffer no prejudice or damage if the requested relief is granted. Last, Plaintiff's complaint is detailed and contains a permanent of all written and nonwritten evidence, arguments, or other representations made in support of the application.

Page **4** of **8**

_Elements for a Temporary Restraining Order_

A party seeking a temporary restraining order must demonstrate that the following elements weigh in its favor: (1) it has a likelihood of success on the merits of the claim, (2) it will suffer irreparable injury if the injunction is not granted, (3) the harm it will suffer outweighs any harm that the opposing party will suffer if the injunction is entered, and (4) the injunction is in the public interest. _State Employees Ass'n v Department of Mental Health_, 421 Mich 152, 157-158; 365 NW2d 93 (1984); _Davies v Department of Treasury_, 199 Mich App 437, 439; 502 NW2d 693 (1992). Additionally, injunctive relief "may not be arbitrary, but rather must be in accordance with the fixed principles of equity jurisdiction and the evidence in the case." _Davis v City of Detroit Fin Review Team_, 296 Mich App 568, 612; 821 NW2d 896 (2012).

i)  _Martino Counseling asserts that it will prevail on the underlying breach of fiduciary and contract claims._

Martino Counseling and Tebra had a written contract in 2019 for Tebra (then Kareo, Inc.) to perform certain services on behalf of Martino Counseling.  Those services were performed even after the written contract expired between the parties.  However, beginning in June of 2023, Tebra began to slack in its performance, culminating with not sending out any invoicing, claims, or billing in October 2023.  This resulted in significant financial harm to Martino Counseling with $450,000.00 in unclaimed or unbilled services pending.  Martino Counseling has had to take out a loan and has lost patients based on Tebra's dereliction of its duties owed to Martino Counseling.  Therefore, Martino Counseling asserts that it will likely prevail on the underlying actions in this matter.

ii)  _Martino Counseling will suffer irreparable financial harm unless the requested relief is granted._

"The mere apprehension of future injury or damage cannot be the basis for injunctive relief." _Slis v State of Michigan_, 332 Mich App 312, 337; 956 NW2d 569 (2020) (quoting _Pontiac Fire Fighters Union Local 376 v City of Pontiac_, 482 Mich 1, 9; 753 NW2d 595 (2008)).  Here, Martino Counseling has already suffered significant financial harm in an estimated amount of

$881,652.00 as of the time of this filing. That does not include the additional interest and other financial harm that comes from the loans that Martino Counseling has had to obtain in order to keep its business in operation.  If Martino Counseling is not given the information to make claims on the outstanding $450,000.00 it is in danger of closing its doors.  Moreover, if the full amount of data and information is not provided and disclosed to Martino Counseling, it could be held without any ability for Martino Counseling to receive it for years while this matter is tied up in litigation. This includes current patient contact information, health insurance and billing information for current patients, and other information vital for Martino Counseling to continue running its business. Not granting the injunction essentially rubber stamps Tebra's financial terrorism retaliation campaign against Martino Counseling for Martino Counseling choosing to find a new and adequate practice management provider.

In addition to financial harm, Martino Counseling is without access to its patients' digital files and information which it uses to treat its patients. Defendant's refusal to provide Plaintiff with this data would cause an interruption in Plaintiff's patients' continuity of treatment and could interrupt their care.  Therefore, Martino Counselling and its clients will suffer severe and irreparable harm if the requested information is not turned over.

iii)  *The harm to Martino Counseling would far outweigh any harm to Tebra for providing the billing information and holding the information contained in Martino Counseling's account.*

Tebra suffers no harm from an injunction or restraining order in this matter.  Tebra simply has to allow Martino Counseling to continue having access to its information and cooperate with the transfer of the information to the new practice management company so Martino Counseling may continue to operate as a functioning business and provide continued care to its patients. Tebra was the initial breaching party of any duty or contract by simply not providing the services that Martino Counseling was paying for and Tebra should not be allowed to withhold Martino Counseling's information and information needed to obtain $450,000.00 in unclaimed income

while this action is pending.  Therefore, <u>not</u> granting the requested relief would harm Martino Counseling far more than any harm that would come to Tebra if the requested relief is not granted.

iv) *This injunction would be in the public interest.*

It is in the public's best interest that a medical practice management company be allowed to withhold patient records and data from a medical provider for any reason.  It would benefit the public that when a party providing medical practice management does not perform its duties (such as Tebra) the breaching party should be on notice that it cannot hold the medical provider's patient data "hostage" because the medical provider secured a new supplier of services.  Even if this Court does not agree that the preliminary order would benefit the public, Tebra has no facts or support that this factor weighs in Tebra's favor either.  A finding of favor to Tebra under this factor would only encourage retaliation by an underperforming service provider to its customers. Therefore, an preliminary order would be to the benefit of the public.

<u>**CONCLUSION**</u>

For the reasons stated in Martino Counseling's Complaint, accompanying Motion and this Brief, Martino Counseling asks this Court to award it with equitable relief as follows:

1.   Defendants are immediately enjoined from withholding billing, patient, scheduling, and any other information related to Martino Counseling that is currently in the possession of Defendant.

2.   Defendants must preserve any and all records of Martino Counseling whether held digitally, physically, or otherwise by Defendant.

3.   Defendant must immediately release information and possession of the pending billing and claims to CureMD, including any patient information, payor information, or other documents or information necessary for billing of said invoices or claims to occur.

4.   This order shall remain in full force and effect until this court specifically orders otherwise.

Page **7** of **8**

5.  Defendants shall show cause before this Court as to why a preliminary injunction should

not be ordered according to the terms and conditions set forth herein.

Respectfully Submitted:

Dated: November _____, 2023

By: _____
Michelle M. McLean (P71393)
Matthew F. Burns (P75281)
Attorneys for Plaintiff

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF KENT

JOE MARTINO COUNSELING, PLLC,

Plaintiff,

Case No:  23-                -CBB

v.

HON.

TEBRA TECHNOLOGIES, INC.,

Defendant,

---

Michelle M. McLean (P71393)
Matthew F. Burns (P75281)
BOLHOUSE,  HOFSTEE  &  MCLEAN,
P.C.
Attorneys for Plaintiff
3996 Chicago Drive S.W.
Grandville, Michigan 49418
(616) 531-7733

---

## EX-PARTE TEMPORARY RESTRAINING ORDER PURSUANT TO MCR 3.310(B)

At a session of said Court held in the Kent County Circuit
Court, State of Michigan  on
the _____ day of _____, 2023:

**PRESENT:** _____
**Circuit Court Judge**

This matter came before the Court upon the ex-parte motion filed by the Plaintiff; the Court having determined that Plaintiff met the requirements set forth in MCR 3.310(B)(1)(a)-(c), and that the order may issue without a hearing; **NOW THEREFORE, IT IS SO ORDERED:**

1.  Defendant shall be immediately enjoined from withholding Plaintiff's data and patient information, including but not limited to its claims, billing records, scheduling information, file notes, and any other information or data related to Martino Counseling that is currently in the possession of Defendant.

2.  Defendant must preserve any and all records of Martino Counseling whether held digitally, physically, or otherwise by Defendant.

1

3. Defendant must immediately release information and possession of the Plaintiff's bills and claims to CureMD, including any of Martion Counseling's patient information, payor information, or any and all other documents, data, or information necessary for CureMD to process and bill Plaintiff's outstanding claims and to protect Plaintiff's clients' HIPPA privileged information.

4. This order was issued at _____ a.m./ p.m. on _____ 2023. MCR 3.310(B)(2)(a).

5. The injury to Plaintiff is significant lost profits, loss of patient good will, damage to its reputation, and disruption of the care and treatment of Plaintiff's patients which are irreparable, and is why this order was granted without notice to the Defendant. MCR 3.310(B)(2)(b).

6. Defendants shall appear and show cause before this Court on:

   _____, 2023 at _____ a.m./p.m.  as to why this temporary order should be dissolved.  Plaintiff shall serve this order on the Defendant and file a Notice of Hearing and Proof of Service with this Court. MCR 3.310(B)(2)(c).

7. This motion is supported by Plaintiff's Verified Complaint. MCR 3.310(B)(1)(a).

8. This order shall expire 14 days after its entry but may be extended upon a motion filed by Plaintiff explaining why good cause exists for its extension. MCR 3.310(B)(2)(3).

9. This order does not close the case file and does not resolve the last pending claim between the parties.

**IT IS SO ORDERED.**

| Certified a True Copy: | |
| --- | --- |
| _____ | |
| Deputy Court Clerk | |

Honorable
Circuit Court Judge

9414 7266 9904 2202 8948 57

RETURN RECEIPT REQUESTED

Restricted Delivery

ZIP 49418
02 7H
0001300208     DEC 15 2023

$ 018.45⁰

Tebra Technologies, Inc
C/O Incorporating Services, LTD
40600 Ann Arbor Road E, Suite 200
Plymouth, MI 48170

BOLHOUSE, HOFSTEE & McLEAN, P.C.
ATTORNEYS AT LAW
GRANDVILLE STATE BANK BUILDING
3996 CHICAGO DRIVE SW
GRANDVILLE, MICHIGAN 49418

Mark D. Hofstee
Michelle M. McLean
Jamie J. Vander Kolk
Victoria J. Drake
Matthew F. Burns
Katie N. Steffes

Richard L. Bolhouse  (1953 – 2021)

Telephone (616) 531-7711
Facsimile (616) 531-7757

www.bolhouselaw.com

December 22, 2023

*VIA REGULAR US 1ˢᵗ CLASS MAIL AND VIA EMAIL TO LEGAL@TEBRA.com*

Tebra Technologies, Inc.
C/O Incorporating Services, LTD
40600 Ann Arbor Road E, Suite 200
Plymouth, MI 48170

　　　　　**Re:　Joe Martino Counseling, LLC v Tebra Technologies, Inc.**
　　　　　　　　**Case No. 23-12090-CBB**
　　　　　　　　**Our File No. 23-0439**

Dear Tebra Technologies, Inc.:

　　　　Enclosed please find copies of the following, filed on behalf of Joe Martino Counseling, LLC, in the Kent County Circuit Court:

　　　1.　Plaintiff's 2nd Ex-Parte Motino for a Temporary Restraining Order Pursuant to MCR 3.310(B) (Expedited Consideration Requested); and
　　　2.　Plaintiff's Brief in Support of a Motion for a Temporary Restraining Order Pursuant to MCR 3.310(B) (Expedited Consideration Requested.
　　　3.　Proposed Temporary Restraining Order;
　　　4.　Proof of Service

　　　　If you have any questions or concerns, please do not hesitate to contact our office.

　　　　　　　　　　　　　　Sincerely,

　　　　　　　　　　　　　　Danielle Schoonmaker
　　　　　　　　　　　　　　Paralegal

/dcs
Enclosures

Cc:　Joe Martino Counseling (via email)

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF KENT

JOE MARTINO COUNSELING, PLLC,

      Plaintiff,

v.

TEBRA TECHNOLOGIES, INC.,

      Defendant,

Case No:  23-12090 -CBB

HON.  Curt A. Benson

---

Michelle M. McLean (P71393)
Matthew F. Burns (P75281)
BOLHOUSE, HOFSTEE & MCLEAN,
P.C.
Attorneys for Plaintiff
3996 Chicago Drive S.W.
Grandville, Michigan 49418
(616) 531-7733

---

## PROOF OF SERVICE

On the date below, the undersigned, employed in the offices of Bolhouse, Hofstee & McLean, P.C., served the **2nd *Ex-Parte Motion for TRO; Brief in Support; Proposed TRO; and Proof of Service*** to legal@tebra.com and via regular United States 1st Class Mail to:

Tebra Technologies, Inc.
C/O Incorporating Services, LTD
40600 Ann Arbor Road E, Suite 200
Plymouth, MI 48170

I declare that the statements above are true to the best of my information, knowledge and belief.

Date: ___December 13, 2023___

                              */s/ Michelle M. McLean*_____
                              Michelle M. McLean

1

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF KENT

JOE MARTINO COUNSELING, PLLC,

      Plaintiff,

v.

TEBRA TECHNOLOGIES, INC.,

      Defendant,

Case No: 23-12090 -CBB

HON.  Curt A. Benson

---

Michelle M. McLean (P71393)
Matthew F. Burns (P75281)
BOLHOUSE, HOFSTEE & MCLEAN, P.C.
Attorneys for Plaintiff
3996 Chicago Drive S.W.
Grandville, Michigan 49418
(616) 531-7733

---

## PLAINTIFF'S 2nd EX-PARTE MOTION FOR A TEMPORARY RESTRAINING ORDER PURSUANT TO MCR 3.310(B)

### *** EXPEDITED CONSIDERATION REQUESTED ***

NOW COMES Plaintiffs, Joe Martino Counseling, PLLC ("Martino Counseling") by and through its attorneys, BOLHOUSE, HOFSTEE & MCLEAN, P.C., and asks this Honorable Court to issue a Temporary Restraining Order against Defendant, Tebra Technologies, Inc. ("Tebra") and to order Defendant as to show cause as to why a preliminary injunction should be issued against Tebra pursuant to MCR 3.310.  Martino Counseling's Motion is supported by the attached brief.

Martino Counseling hereby requests this Court order the following:

1. Defendant to be immediately enjoined from withholding Plaintiff's data and patient information, including but not limited to claims, billing records, scheduling information, file notes, and any other information or data related to Martino Counseling that is currently in the possession of Defendant.

2. Defendant must preserve any and all records of Martino Counseling whether held digitally, physically, or otherwise by Defendant.

3. Defendant must immediately release information and possession of the Plaintiff's bills and claims to CureMD, including any of Martion Counseling's patient information, payor information, or any and all other documents, data, or information necessary for CureMD to process and bill Plaintiff's outstanding claims and to protect Plaintiff's clients' HIPPA privileged information.

4. This order shall remain in full force and effect until this Court specifically orders otherwise.

5. Defendants shall show cause before this Court as to why a preliminary injunction should not be ordered according to the terms and conditions set forth herein.

6. This motion is supported by Plaintiff's Verified Complaint.

7. *Plaintiff's counsel has attached a WRITTEN CERTIFICATE of the efforts made to provide Defendant notice as Exhibit A.*

8. A copy of the proposed Ex-Parte Temporary Restraining Order is attached as **Exhibit B.**

Respectfully Submitted:

Dated: December _____, 2023          By:_____

Michelle M. McLean (P71393)
Matthew F. Burns (P75281)
Bolhouse, Hofstee & McLean, PC
Grandville State Bank Building
3996 Chicago Drive SW
Grandville MI 49418
Phone: (616) 531-7711
Attorneys for Plaintiff

EXHIBIT

A

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF KENT

JOE MARTINO COUNSELING, PLLC,

      Plaintiff,

Case No: 23- 12090 -CBB

HON.  CURT A. BENSON

v.

TEBRA TECHNOLOGIES, INC.,

      Defendant,

---

Michelle M. McLean (P71393)
Matthew F. Burns (P75281)
BOLHOUSE, HOFSTEE & MCLEAN, P.C.
Attorneys for Plaintiff
3996 Chicago Drive S.W.
Grandville, Michigan 49418
(616) 531-7733

---

## ATTORNEY CERTIFICATE

"I, the undersigned attorney or party, hereby certify and represent to the Court that:

_____X_____ To the best of my knowledge, no attorney is representing the opposing party in this matter at this time and no attorney has contacted me regarding the representation of the opposing party prior to filing this request for ex parte relief;  **OR,**

_____ Prior to presenting this request for ex parte relief to the Court for approval, I contacted all attorneys of record and/or all attorneys that have contacted me as to their representation of the opposing party, transmitted a copy of the pleadings and proposed order of the requested ex parte relief, and notified them of the time and place that I would be presenting this requested ex parte relief to the Court; **AND,**

      _____ After conferring, no attorney of record wishes to be heard prior to the presentment of this request for ex parte relief; **or,**

      _____ After conferring, no agreement could be reached as to this request for ex parte relief, and such counsel or party stated that they would be present on (date) _____ at (time) _____, in the _____ Judicial District Court to be heard on this matter prior to the Court signing any order for ex parte relief; **or,**

      _____ I was unable to confer with opposing counsel and left a message with _____, an individual in the office of opposing counsel, on (date) _____ at (time) _____ and informed him or her that I would present the request for ex parte relief on (date) _____ at (time) _____, in the _____ Judicial Circuit Court and they should be present at such time if they

wished to be heard on this matter prior to the Court signing any order for ex parte relief; **or,**

_____ After diligent attempts, I was unable to confer with opposing counsel and was further unable to leave a message with any individual in the office of opposing counsel regarding the presentment of this request for ex parte relief.

**Describe efforts to contact:** The Defendant has been served copies of all the pleadings, including the ExParte Motion for A TRO by mailing copies of all the pleadings to its Registered Agent on December 15, 2023 (via Registered Mail). No attorney or authorized person on behalf of the Defendant has contacted me as of the filing of this amended motion for a TRO.

**Reasons that notice is not required:** The relief that is sought will not prejudice the Defendant in any way is a necessary means to allow the Plaintiff to mitigate damages, which will ultimately serve the interests of justice.

SIGNED on ___Dec 22___, 20_23_.

/s/ _Michelle M M_

Michelle M. McLean (P71393)
Attorney for Plaintiff



EXHIBIT

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF KENT

JOE MARTINO COUNSELING, PLLC,

     Plaintiff,

v.

TEBRA TECHNOLOGIES, INC.,

     Defendant,

Case No: 23-12090 -CBB

HON. Curt A. Benson

---

Michelle M. McLean (P71393)
Matthew F. Burns (P75281)
BOLHOUSE, HOFSTEE & MCLEAN, P.C.
Attorneys for Plaintiff
3996 Chicago Drive S.W.
Grandville, Michigan 49418
(616) 531-7733

---

### EX-PARTE TEMPORARY RESTRAINING ORDER PURSUANT TO MCR 3.310(B)

At a session of said Court held in the Kent County Circuit
Court, State of Michigan on
the _____ day of _____, 2023:

#### PRESENT: HON CURT A BENSON
#### Circuit Court Judge

This matter came before the Court upon the ex-parte motion filed by the Plaintiff; the Court having determined that Plaintiff met the requirements set forth in MCR 3.310(B)(1)(a)-(c), and that the order may issue without a hearing; **NOW THEREFORE, IT IS SO ORDERED:**

1. Defendant shall be immediately enjoined from withholding Plaintiff's data and patient information, including but not limited to its claims, billing records, scheduling information, file notes, and any other information or data related to Martino Counseling that is currently in the possession of Defendant.

2. Defendant must preserve any and all records of Martino Counseling whether held digitally, physically, or otherwise by Defendant.

3. Defendant must immediately release information and possession of the Plaintiff's bills and claims to CureMD, including any of Martion Counseling's patient information, payor

1

information, or any and all other documents, data, or information necessary for CureMD to process and bill Plaintiff's outstanding claims and to protect Plaintiff's clients' HIPPA privileged information.

4. This order was issued at _____a.m./ p.m. on _____ 2023. MCR 3.310(B)(2)(a).

5. The injury to Plaintiff is significant lost profits, loss of patient good will, damage to its reputation, and disruption of the care and treatment of Plaintiff's patients which are irreparable, and is why this order was granted without notice to the Defendant. MCR 3.310(B)(2)(b).

6. Defendants shall appear and show cause before this Court on:

_____, 2023 at _____a.m./p.m.  as to why this temporary order should be dissolved.  Plaintiff shall serve this order on the Defendant and file a Notice of Hearing and Proof of Service with this Court. MCR 3.310(B)(2)(c).

7. This motion is supported by Plaintiff's Verified Complaint. MCR 3.310(B)(1)(a).

8. This order shall expire 14 days after its entry but may be extended upon a motion filed by Plaintiff explaining why good cause exists for its extension. MCR 3.310(B)(2)(3).

9. This order does not close the case file and does not resolve the last pending claim between the parties.

**IT IS SO ORDERED.**

Certified a True Copy:

_____
Deputy Court Clerk

_____
Honorable Curt A. Benson
Circuit Court Judge

2

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF KENT

JOE MARTINO COUNSELING, PLLC,

     Plaintiff,

v.

TEBRA TECHNOLOGIES, INC.,

     Defendant,

Case No: 23-12090 -CBB

HON.  Curt A. Benson

---

Michelle M. McLean (P71393)
Matthew F. Burns (P75281)
BOLHOUSE, HOFSTEE & MCLEAN, P.C.
Attorneys for Plaintiff
3996 Chicago Drive S.W.
Grandville, Michigan 49418
(616) 531-7733

---

## PLAINTIFF'S BRIEF IN SUPPORT OF A MOTION FOR A TEMPORARY RESTRAINING ORDER PURSUANT TO MCR 3.310(B)

### *** EXPEDITED CONSIDERATION REQUESTED ***

### BACKGROUND FACTS

This matter could be the basis for any novel found in a grocery store line, one party abuses the relationship with a second party.  When the second party points out the first party's misgivings, the first party acts in anger and retaliation against the second party.  The difference between this matter and any cheesy romance novel in a grocery store is that the second party has suffered damages in the amount of hundreds of thousands of dollars due to the first party's blunders.

The first party is the Plaintiff, Joe Martino Counseling, PLLC ("Martino Counseling"), a Michigan based counseling service which operates out of Kent County, Michigan. (V. Comp. ¶ 1). The second party is the Defendant, Tebra Technologies ("Tebra"), a California corporation that is registered to engage in commerce in the State of Michigan. (V. Comp. ¶ 4).  Martino Counseling hired Tebra (formerly known as Kareo, Inc.) in 2019 to perform various services that including sending out billing and claims, and maintaining the schedule for the therapists and counselors at

Martino Counseling. (V. Comp. ¶ 7- 8). Since that initial agreement, there have been no renewals or updated signed contracts between the parties. (*Id.* ¶ 11). Martino Counseling relied upon Tebra to act as its agent in the matters of billing, filing claims, and generally collecting money for services rendered by Martino Counseling. (*Id.* ¶ 15-16). From the initial contract in 2019, through November of 2023, Martino Counseling paid all monthly fees for Tebra to render the contracted services. (*Id.* ¶ 23). Despite Martino Counseling's regular monthly payments, Tebra began to breach the contract between the parties in June 2023. (*Id.* ¶ 18). By August 2023, Martino Counseling's daily operations were being affected. (*Id.* ¶ 19-20). The issues affecting Martino Counseling included failing to process claims to insurance companies, failing to manage patient scheduling, improperly designating payors of claims resulting in payments being sent to different providers other than Plaintiff, all resulting in lost or delayed income to Plaintifff. (*Id.* ¶ 20).

Moreover, as of October 2023, Martino Counseling discovered that no claims or invoices had been filed by Tebra on behalf of Martino Counseling. (*Id.* ¶ 22). As of the filing of the accompanying Verified Complaint, and this Motion, Tebra is holding $450,000.00 of unbilled claims or charges that are owed to Martino Counseling. (*Id.* ¶ 51).

As a result of Tebra's lack of filing invoices and claims, Martino Counseling has sought and engaged a new practice management company, CureMD. (*Id.* ¶ 44). When notified of the change, and that Martino Counseling originally advised Tebra would not pay the November 2023 invoice due to the fact that Tebra was the "first breaching party," Tebra retaliated by immediately shutting off Martino Counseling's access to its patient records and account information. (*Id.* ¶ 41).

The information that Martino Counseling has been able to obtain and send to CureMD has resulted in additional expenses of $193,600.00 for CureMD to be able to input data for Martino Counseling's account. (*Id.* ¶ 53). Martino Counseling only obtained this information when it paid the November 2023 invoice, despite Tebra still not performing any duties on behalf of Martino Counseling. (*Id.* ¶ 51) Tebra is continuing to hold Martino Counseling's client information, data,

and claims, including the unbilled $450,000.00 in claims that Martino Counseling needs to transfer to CureMD. (*Id.* ¶ 58).

Given Tebra's lack of cooperation in the transfer of data and Martino Counseling's fear of issues with serving their patients' mental health needs as well as Martino Counseling's losing significant unbilled income, Martino Counseling was left no choice but to file this motion. (*Id.* ¶ 90). Should Martino Counseling lose access to its information, it will lose at least $450,000.00 in income that Tebra previously did not invoice and there will be no way for them to re-create this information. This would be a significant irreparable harm, especially considering the information would be held solely in Tebra's control and Tebra has already shown it will act in a retaliatory manner.

Martino Counseling, is simply seeking the ability to obtain the information that is has already paid for, and owns, and needs to collect on the $450,000.00 in unbilled claims. Martino Counseling also needs a court order that Tebra will not destroy, alter, delete, or otherwise rid itself of the information and data held for, belonging to, or associated with Martino Counseling.

## **LAW AND ARGUMENT**

### A. **Legal Standards**

#### *Court Rule Applicable to Temporary Restraining Order*

Through this motion, Martino Counseling seeks a temporary restraining order under MCR 3.310(B) without a hearing.

MCR 3.310(B) provides, "A temporary restraining order may be granted without written or oral notice to the adverse party or the adverse party's attorney only if: (a) it clearly appears from specific facts shown by affidavit or by a verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant from the delay required to effect notice or from the risk that notice will itself precipitate adverse action before an order can be issued; (b) the applicant's attorney certifies to the court in writing the efforts, if any, that have been made

to give the notice and the reasons supporting the claim that notice should not be required; and (c) a permanent record or memorandum is made of any nonwritten evidence, argument, or other representations made in support of the application. See MCR 3.310(B)(1)(a)-(c).

Furthermore, MCR 3.310(B)(2) provides, "A temporary restraining order granted without notice must: (a) be endorsed with the date and time of issuance; (b) describe the injury and state why it is irreparable and why the order was granted without notice; (c) except in domestic relations actions, set a date for hearing at the earliest possible time on the motion for a preliminary injunction or order to show cause why a preliminary injunction should not be issued.

MCR 3.310(B)(3) provides, "Except in domestic relations actions, a temporary restraining order granted without notice expires by its terms within such time after entry, not to exceed 14 days, as the court sets unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period. The reasons for the extension must be stated on the record or in a document filed in the action.

Last, MCR 3.310(B)(4) provides, "A temporary restraining order granted without notice must be filed forthwith in the clerk's office and entered in the court records."

In the present case, Plaintiff's motion is supported by Plaintiff's detailed, verified complaint which demonstrates by specific facts that immediate and irreparable injury, loss, or damage will result to the Plaintiff (and Plaintiff's medical patients) from the delay required to effect notice or from the risk that notice will itself precipitate adverse action before an order can be issued. Also, Plaintiff's attorney has attempted to provide notice to Tebra of the request for a Temporary Restraining Order, and at this time Tebra will suffer no prejudice or damage if the requested relief is granted. Last, Plaintiff's complaint is detailed and contains a permanent of all written and nonwritten evidence, arguments, or other representations made in support of the application.

<u>*Elements for a Temporary Restraining Order*</u>

A party seeking a temporary restraining order must demonstrate that the following elements weigh in its favor: (1) it has a likelihood of success on the merits of the claim, (2) it will suffer irreparable injury if the injunction is not granted, (3) the harm it will suffer outweighs any harm that the opposing party will suffer if the injunction is entered, and (4) the injunction is in the public interest. *State Employees Ass'n v Department of Mental Health*, 421 Mich 152, 157-158; 365 NW2d 93 (1984); *Davies v Department of Treasury*, 199 Mich App 437, 439; 502 NW2d 693 (1992). Additionally, injunctive relief "may not be arbitrary, but rather must be in accordance with the fixed principles of equity jurisdiction and the evidence in the case." *Davis v City of Detroit Fin Review Team*, 296 Mich App 568, 612; 821 NW2d 896 (2012).

    i)   *Martino Counseling asserts that it will prevail on the underlying breach of fiduciary and contract claims.*

Martino Counseling and Tebra had a written contract in 2019 for Tebra (then Kareo, Inc.) to perform certain services on behalf of Martino Counseling.  Those services were performed even after the written contract expired between the parties.  However, beginning in June of 2023, Tebra began to slack in its performance, culminating with not sending out any invoicing, claims, or billing in October 2023.  This resulted in significant financial harm to Martino Counseling with $450,000.00 in unclaimed or unbilled services pending.  Martino Counseling has had to take out a loan and has lost patients based on Tebra's dereliction of its duties owed to Martino Counseling. Therefore, Martino Counseling asserts that it will likely prevail on the underlying actions in this matter.

    ii)   *Martino Counseling will suffer irreparable financial harm unless the requested relief is granted.*

"The mere apprehension of future injury or damage cannot be the basis for injunctive relief." *Slis v State of Michigan*, 332 Mich App 312, 337; 956 NW2d 569 (2020) (quoting *Pontiac Fire Fighters Union Local 376 v City of Pontiac*, 482 Mich 1, 9; 753 NW2d 595 (2008)).  Here, Martino Counseling has already suffered significant financial harm in an estimated amount of

$881,652.00 as of the time of this filing. That does not include the additional interest and other financial harm that comes from the loans that Martino Counseling has had to obtain in order to keep its business in operation.  If Martino Counseling is not given the information to make claims on the outstanding $450,000.00 it is in danger of closing its doors.  Moreover, if the full amount of data and information is not provided and disclosed to Martino Counseling, it could be held without any ability for Martino Counseling to receive it for years while this matter is tied up in litigation. This includes current patient contact information, health insurance and billing information for current patients, and other information vital for Martino Counseling to continue running its business. Not granting the injunction essentially rubber stamps Tebra's financial terrorism retaliation campaign against Martino Counseling for Martino Counseling choosing to find a new and adequate practice management provider.

In addition to financial harm, Martino Counseling is without access to its patients' digital files and information which it uses to treat its patients. Defendant's refusal to provide Plaintiff with this data would cause an interruption in Plaintiff's patients' continuity of treatment and could interrupt their care.  Therefore, Martino Counselling and its clients will suffer severe and irreparable harm if the requested information is not turned over.

iii) *The harm to Martino Counseling would far outweigh any harm to Tebra for providing the billing information and holding the information contained in Martino Counseling's account.*

Tebra suffers no harm from an injunction or restraining order in this matter.  Tebra simply has to allow Martino Counseling to continue having access to its information and cooperate with the transfer of the information to the new practice management company so Martino Counseling may continue to operate as a functioning business and provide continued care to its patients. Tebra was the initial breaching party of any duty or contract by simply not providing the services that Martino Counseling was paying for and Tebra should not be allowed to withhold Martino Counseling's information and information needed to obtain $450,000.00 in unclaimed income

while this action is pending.  Therefore, <u>not</u> granting the requested relief would harm Martino Counseling far more than any harm that would come to Tebra if the requested relief is not granted.

iv) *This injunction would be in the public interest.*

It is in the public's best interest that a medical practice management company be allowed to withhold patient records and data from a medical provider for any reason.  It would benefit the public that when a party providing medical practice management does not perform its duties (such as Tebra) the breaching party should be on notice that it cannot hold the medical provider's patient data "hostage" because the medical provider secured a new supplier of services.  Even if this Court does not agree that the preliminary order would benefit the public, Tebra has no facts or support that this factor weighs in Tebra's favor either.  A finding of favor to Tebra under this factor would only encourage retaliation by an underperforming service provider to its customers. Therefore, an preliminary order would be to the benefit of the public.

## CONCLUSION

For the reasons stated in Martino Counseling's Complaint, accompanying Motion and this Brief, Martino Counseling asks this Court to award it with equitable relief as follows:

1.  Defendants are immediately enjoined from withholding billing, patient, scheduling, and any other information related to Martino Counseling that is currently in the possession of Defendant.

2.  Defendants must preserve any and all records of Martino Counseling whether held digitally, physically, or otherwise by Defendant.

3.  Defendant must immediately release information and possession of the pending billing and claims to CureMD, including any patient information, payor information, or other documents or information necessary for billing of said invoices or claims to occur.

4.  This order shall remain in full force and effect until this court specifically orders otherwise.

5.  Defendants shall show cause before this Court as to why a preliminary injunction should

not be ordered according to the terms and conditions set forth herein.

Respectfully Submitted:

Dated:  December 22, 2023

By: _____

Michelle M. McLean (P71393)
Matthew F. Burns (P75281)
Attorneys for Plaintiff

BOLHOUSE, HOFSTEE & MCLEAN, P.C.
GRANDVILLE STATE BANK BLDG
3996 CHICAGO DR SW
GRANDVILLE MI 49418-1384

GRAND RAPIDS MI 493

23 DEC 2023 PM 3 L

TEBRA Techndogies Inc.

c/o: Incorporating Service, LTD

40600 Ann Arbor Road E.

Ste 200

Plymouth, MI 48170

48170-46%699

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF KENT

JOE MARTINO COUNSELING, PLLC,

    Case No:  23-12090 -CBB

    Plaintiff,

    HON.  Curt A. Benson

v.

TEBRA TECHNOLOGIES, INC.,

    Defendant,

_____

Michelle M. McLean (P71393)
Matthew F. Burns (P75281)
BOLHOUSE, HOFSTEE & MCLEAN, P.C.
Attorneys for Plaintiff
3996 Chicago Drive S.W.
Grandville, Michigan 49418
(616) 531-7733

_____

**EX-PARTE TEMPORARY RESTRAINING ORDER PURSUANT TO MCR 3.310(B)**

At a session of said Court held in the Kent County Circuit
Court, State of Michigan  on
the _2_ day of _Jan_ , 2023:

**PRESENT:  HON CURT A BENSON**
**Circuit Court Judge**

This matter came before the Court upon the ex-parte motion filed by the Plaintiff; the Court having determined that Plaintiff met the requirements set forth in MCR 3.310(B)(1)(a)-(c), and that the order may issue without a hearing; **NOW THEREFORE, IT IS SO ORDERED:**

1. Defendant shall be immediately enjoined from withholding Plaintiff's data and patient information, including but not limited to its claims, billing records, scheduling information, file notes, and any other information or data related to Martino Counseling that is currently in the possession of Defendant.

2. Defendant must preserve any and all records of Martino Counseling whether held digitally, physically, or otherwise by Defendant.

1

3. Defendant must immediately release information and possession of the Plaintiff's bills and claims to CureMD, including any of Martion Counseling's patient information, payor information, or any and all other documents, data, or information necessary for CureMD to process and bill Plaintiff's outstanding claims and to protect Plaintiff's clients' HIPPA privileged information.

4. This order was issued at _7:30_ a.m./p.m. on _1/2/_ 2023. MCR 3.310(B)(2)(a).

5. The injury to Plaintiff is significant lost profits, loss of patient good will, damage to its reputation, and disruption of the care and treatment of Plaintiff's patients which are irreparable, and is why this order was granted without notice to the Defendant. MCR 3.310(B)(2)(b).

6. Defendants shall appear and show cause before this Court on: _January 11_ , 20_24_ at _1:30_ a.m./p.m. as to why this temporary order should be dissolved. Plaintiff shall serve this order on the Defendant and file a Notice of Hearing and Proof of Service with this Court. MCR 3.310(B)(2)(c).

7. This motion is supported by Plaintiff's Verified Complaint. MCR 3.310(B)(1)(a).

8. This order shall expire 14 days after its entry but may be extended upon a motion filed by Plaintiff explaining why good cause exists for its extension. MCR 3.310(B)(2)(3).

9. This order does not close the case file and does not resolve the last pending claim between the parties.

IT IS SO ORDERED.

Honorable Curt A. Benson
Circuit Court Judge

Certified a True Copy:

_____
Deputy Court Clerk

2